[No. 44510-3-I. Division One. June 4, 2001.]

*In the Matter of the Personal Restraint of* RICARDO A. CAPELLO, *Petitioner.*

---

[11] *Aitken*, 79 Wn. App. at 893-94.

[12] *Aitken*, 79 Wn. App. at 894.

*Ricardo A. Capello*, pro se.

*Christopher Gibson* (of *Nielsen, Broman & Associates, P.L.L.C.*), for petitioner.

*Christine O. Gregoire, Attorney General*, and *Heather Klein* and *Donna H. Mullen, Assistants*, for respondent.

BAKER, J. — Ricardo A. Capello filed a personal restraint petition (PRP) challenging the Washington State Department of Corrections' (DOC) decision to require him to obtain a preapproved residence location and living arrangement before transferring him to community custody in lieu of early release. Capello contends that DOC lacks the authority to impose this condition because, at the time of his sentencing, this was an optional condition which the trial court declined to impose at sentencing. We agree, and grant Capello's petition.

I

In 1991, Capello entered an *Alford*[1] plea to one count of first degree kidnapping with sexual motivation. Because

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

this crime is defined as a "serious violent offense"[2] and a "sex offense,"[3] Capello is statutorily required to serve a term of community placement following his release from prison.[4] During the community placement period, an offender is subject to various crime-related prohibitions and other conditions of release.[5] Offenders subject to community placement are excluded from the program allowing early release from incarceration based on earned early release credits. Instead, they become eligible for transfer to community custody status in lieu of earned early release time.[6] This transfer cannot occur until DOC approves the offender's proposed release plan. An inmate not approved for community custody must remain in prison until his maximum release date, and begin the sentence of community placement at that time.[7]

DOC's presentence investigation report on Capello recommended numerous conditions of community placement, including what was then a statutory optional "special condition" that "[l]iving arrangement and employment subject to prior approval and verification by the supervising Community Corrections Officer." Despite DOC's recommendation, the trial court declined to impose this condition.

Capello committed no infractions while incarcerated, and accordingly he has been accumulating earned early release credits for good conduct.[8] However, DOC has informed Capello that it will require him to obtain a preapproved residence location and living arrangement before he can be transferred to community custody in lieu of earned early release. Capello submitted a residential facilities offender

---

[2] RCW 9.94A.030(34)(a).

[3] RCW 9.94A.030(36)(c).

[4] Former RCW 9.94A.120(8)(b) (1991).

[5] RCW 9.94A.030(6).

[6] RCW 9.94A.150(2).

[7] RCW 9.94A.120(9)(b).

[8] Assuming Capello earns the maximum allowable early release credits, he will become eligible for community custody on July 4, 2001.

complaint, requesting that DOC not require him to provide a preapproved address as a condition of his release to community custody. Capello's complaint was returned with the explanation that "you are grieving a state law (RCW 9.94A.120). It is a non-grievable issue."

Capello filed a PRP challenging DOC's decision. Capello claims that he is financially incapable of securing a residence for approval before he is transferred to community custody because he cannot access the funds in his inmate savings account until he is released. Because DOC is refusing to release him until he has an approved residence, DOC's imposition of this requirement essentially deprives him of his earned early release into community custody. DOC responded that RCW 9.94A.150 authorizes it to impose the preapproved residence requirement as part of its overall community custody policy. Capello pointed out in reply that DOC's own directors had stated that requiring a preapproved residence location was not part of DOC's community custody program. Rather, DOC relied on the 1992 amended version of RCW 9.94A.120, which now makes the preapproved residence requirement a standard condition unless expressly waived by the court.

## II

■ Generally, a PRP alleging a constitutional error must show "actual and substantial prejudice," while a PRP alleging nonconstitutional error must show " 'a fundamental defect which inherently results in a complete miscarriage of justice.' "[9] However, these threshold requirements do not apply, as here, when "the challenge is to a decision . . . from which the inmate generally has had no previous or alternative avenue for obtaining state judicial review."[10] Accordingly, we evaluate Capello's PRP by exam-

---

[9] *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-11, 812, 792 P.2d 506 (1990) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d. 417 (1962)).

[10] *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994).

ining only the requirements of RAP 16.4.[11] Under that rule, petitioners must show they have been restrained (RAP 16.4(b)), and that the restraint is unlawful (RAP 16.4(c)).[12]

In 1991, at the time of Capello's offense, the Sentencing Reform Act of 1981 (SRA) included five standard conditions of community placement which were mandatory unless waived by the trial court:

> (i) The offender shall report to and be available for contact with the assigned community corrections officer as directed;

> (ii) The offender shall work at department of corrections-approved education, employment, and/or community service;

> (iii) The offender shall not consume controlled substances except pursuant to lawfully issued prescriptions;

> (iv) An offender in community custody shall not unlawfully possess controlled substances; and

> (v) The offender shall pay supervision fees as determined by the department of corrections.[13]

The 1991 version of the SRA also provided that the court could order any of the following "special" conditions:

> (i) The offender shall remain within, or outside of, a specified geographical boundary;

> (ii) The offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals;

> (iii) The offender shall participate in crime-related treatment or counseling services;

> (iv) The offender shall not consume alcohol;

> (v) *The residence location and living arrangements of a sex offender shall be subject to the prior approval of the department of corrections*; or

---

[11] *Cashaw*, 123 Wn.2d at 149.

[12] RAP 16.4(a).

[13] Former RCW 9.94A.120(8)(b)(i)-(v) (1991).

(vi) The offender shall comply with any crime-related prohibitions.[14]

The DOC presentencing investigation report on Capello recommended that the court impose numerous special conditions of community placement in addition to all of the standard conditions. One of the special conditions DOC recommended was to subject Capello's living arrangement to DOC approval. Despite DOC's recommendation, however, the sentencing court did not impose any special conditions of community placement.

In 1992, after Capello's sentence, the Legislature amended RCW 9.94A.120 by making preapproval of residence location and living arrangement a standard condition of community placement unless expressly waived by the sentencing court.[15]

▮ Although the trial court exercised its discretion not to require Capello to obtain preapproval for his residence location and living arrangement before being transferred to community custody, DOC argues that it may nonetheless impose this condition because RCW 9.94A.150(2) authorizes it to develop a program for transfer into community custody in lieu of earned early release.[16] As previously stated, offenders are excluded from the program allowing earned early release based on earned early release credits; they merely become "eligible" for a transfer to community custody status "in accordance with a program developed by [DOC]."[17] Since 1989, DOC Policy 350.200 has stated that if a release address cannot be established, offenders will remain in confinement until an acceptable address is established or until the maximum release date. Therefore, according to DOC, the preapproved residence requirement is not an additional condition of judgment and sentence, but

---

[14] Former RCW 9.94A.120(8)(c)(i)-(vi) (1991) (emphasis added).

[15] RCW 9.94A.120(9)(b)(v).

[16] We note that this is not the statutory authority cited by DOC when it refused to consider Capello's complaint.

[17] RCW 9.94A.150(2).

rather is an inherent part of DOC's community custody program.

Capello argues that DOC's authority to develop an eligibility program for community custody under RCW 9.94A.150 does not give DOC the discretion to impose a requirement that the trial court specifically considered and rejected, because this action is inconsistent with the version of RCW 9.94A.120 in effect when he was sentenced, and is unsupported by legislative history.

Capello is correct. Former RCW 9.94A.120(8)(c) provides that "the court" may order "special" conditions of community placement. One of those special conditions was preapproval of living arrangements. The SRA defines community custody as a form of community placement.[18] And under former RCW 9.94A.120, the trial court had the authority to impose conditions of community placement. There is nothing in the SRA specifically authorizing DOC to independently impose any of the statutorily listed special conditions of community placement. While the definition of "community custody" acknowledges that an offender is subject to DOC control during that period, it would be inconsistent with RCW 9.94A.120 to interpret this as a grant of independent authority to impose a special condition which the trial court specifically declined to impose. Agencies do not have the power to make rules that amend or change legislative enactments.[19] Furthermore, former RCW 9.94A.120(8)(d) provides that "any conditions of community placement may be removed or modified so as not to be more restrictive by the sentencing court, upon recommendation of [DOC]." The statutory framework of RCW

---

[18] "Community placement" is defined as "that period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned early release. Community placement may consist of entirely community custody, entirely postrelease supervision, or a combination of the two." Former RCW 9.94A.030(5) (1991). "Community custody" is defined as "that portion of an inmate's sentence of confinement in lieu of earned early release time served in the community subject to controls placed on the inmate's movement and activities by the department of corrections." Former RCW 9.94A.030(4) (1991).

[19] *Bird-Johnson Corp. v. Dana Corp.*, 119 Wn.2d 423, 428, 833 P.2d 375 (1992).

9.94A.120 evinces a legislative intent that the trial court, not DOC, has exclusive discretion to decide whether or not to waive the standard conditions enumerated in RCW 9.94A.120(8)(b), and whether or not to impose the special conditions enumerated in RCW 9.94A.120(8)(c).

The legislative history of the 1996 amendments to RCW 9.94A.120 further undermines DOC's position. The final legislative report for Substitute Senate Bill 6274 states that "[u]nder current law, all conditions of supervision must be imposed at the time of sentencing by the court and may not be altered later except to make them less restrictive. The department does not have the statutory authority to impose additional supervision conditions based on information it may learn about an individual's history or deviancy cycle during incarceration." Substitute Senate Bill 6274 amended RCW 9.94A.120 by authorizing DOC to "impose any appropriate conditions on sex offenders during their community custody terms." But DOC's new authority to impose conditions under this act is specifically limited to those offenders sentenced after the effective date of the 1996 amendment. DOC had no authority to impose additional, more restrictive terms of community placement until the Legislature amended the SRA in 1996.

DOC cannot avoid RCW 9.94A.120 by attempting to redefine the preapproved residence requirement as part of its program rather than a condition of community placement. It is a fundamental tenet of statutory construction that every provision of a statute must be read in conjunction with its related provisions to determine legislative intent and to achieve a harmonious and unified statutory scheme.[20] There is no meaningful distinction between a preapproved residence requirement imposed as a condition of community placement by the trial court under RCW 9.94A.120, and the same requirement imposed by DOC as part of its policy for administering the community custody program under RCW 9.94A.150.

---

[20] *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282, *cert. denied*, 531 U.S. 984 (2000).

DOC's argument that the trial court did not waive the preapproved residence requirement is also unpersuasive. Because the judgment and sentence makes no mention of a requirement for a preapproved address, DOC claims that there was no affirmative waiver of that condition, and therefore DOC may impose it as part of its RCW 9.94A.150 policy-making authority. DOC suggests that if Capello wished to challenge the conditions of community placement, he should have raised those concerns before the trial court.[21] The obvious flaw in this argument is that in 1991, the preapproved residence requirement was not a standard condition that was automatically imposed unless waived by the trial court. Rather, it was a special condition that was not imposed unless the court specifically exercised its discretion to do so. The record clearly indicates that the trial court considered and rejected the preapproved residence requirement in Capello's case. The trial court's refusal to impose special conditions of community placement was favorable to Capello and there was no reason for him to complain about it.

As DOC argues, the preapproved residence requirement is both rational and prudent. When releasing a convicted sex offender into the community, it makes sense to discourage the possibility of recidivism by preventing the offender from living in an inappropriate situation. It is not clear why the trial court did not exercise its discretion to impose this condition, but the only relevant fact is that the condition was not imposed.

RAP 16.4(a) authorizes us to grant appropriate relief where the petitioner's restraint is unlawful. Because we hold that DOC cannot lawfully impose the preapproved residence requirement on Capello, we grant Capello's PRP and direct DOC to transfer him to community custody when he is otherwise eligible, without the need for a preapproved residence location and living arrangement.

KENNEDY and Cox, JJ., concur.

Review denied at 145 Wn.2d 1006 (2001).

---

[21] *State v. Armstrong*, 91 Wn. App. 635, 638-39, 959 P.2d 1128 (1998).