75 P.3d 521 (2003)
115 Wash.App. 319
In the Matter of the PERSONAL RESTRAINT OF Darrell W. STEWART, Petitioner.
Nos. 49443-1-I, 49573-9-I.
Court of Appeals of Washington, Division 1.
February 3, 2003.
*522 David Donnan, Washington Appellate Project, Seattle, WA, for Appellant.
*523 Donna Mullen, Attorney General Office, Olympia, WA, for Respondent.
SCHINDLER, J.
At the time petitioner Darrell Stewart was sentenced following his 1989 conviction of two counts of first degree attempted kidnapping, two counts of second degree assault, and one count of violation of the Uniform Firearms Act, the requirement that an offender submit a preapproved residence and living arrangement was a condition of community placement the trial court had the discretion to impose, but was not required to impose. The trial court did not impose this condition on Stewart's community placement. When DOC later attempted to impose this requirement, Stewart filed a personal restraint petition (PRP) pro se, challenging DOC's authority to do so. Based on In re Personal Restraint of Capello,[1] we agreed that DOC did not have the authority to impose this condition and granted his PRP.[2] DOC moved for reconsideration, arguing that the March 14, 2002 amendments to RCW 9.94A.728 explicitly overrule Capello and clarify that DOC has had the authority since 1988, when the Community Custody Act was enacted, to impose this condition and that the legislation has retroactive application. We disagree. The amendments are not clarifying and, because they expressly contravene this court's construction of the statute in Capello, the separation of powers doctrine prevents the amendments from being retroactively applied to Stewart. Accordingly, we deny DOC's motion for reconsideration of our decision granting Stewart's PRP.

BACKGROUND
Statutory scheme for the community placement of sex offenders and serious violent offenders: 1988 to 1992
Both petitioner Stewart and the petitioner in Capello were sentenced under the version of the Sentencing Reform Act (SRA) in effect in 1988 and both were sentenced to terms of community placement under RCW 9.94A.120(8).
Under RCW 9.94A.120(8) (1988), an offender convicted of a serious violent offense or a sex offense was statutorily required to serve a term of community placement following release from prison.[3] The SRA contained five conditions of community placement that were mandatory unless waived by the court: (1) report to and be available for contact with the assigned community corrections officer as directed; (2) work at DOC-approved education, employment, and/or community service; (3) not consume controlled substances except pursuant to lawfully issued prescriptions; (4) while in community custody not unlawfully possess controlled substances; and (5) pay community placement fees as determined by DOC.[4]
In addition to the five mandatory conditions, there were six optional special conditions of community placement within the sentencing court's discretion to impose.[5] One of these optional special conditions was: "[t]he residence location and living arrangements of a sex offender shall be subject to the prior approval of the department of corrections".[6]
In 1992, RCW 9.94A.120 was amended to make preapproval of residence location and living arrangement a mandatory, rather than optional, condition of community placement applicable to offenders convicted of an offense categorized as a sex offense or serious violent offense unless the sentencing court waived it.[7]
Also under the SRA (both the 1988 and 1992 versions), offenders subject to community placement were not entitled to participate in the program allowing early release from prison based on earned early release credits. *524 Instead, such offenders could become eligible for transfer to community custody status by accumulating earned early release credits for good conduct.[8] An offender could not be transferred to community custody status until DOC approved the offender's proposed release plan.[9]
In re Personal Restraint of Capello
In In re Personal Restraint of Capello,[10] the petitioner, Capello, had entered an Alford[11] plea to first degree kidnapping with sexual motivation. The crime was defined as both a serious violent offense and a sex offense, and, accordingly, the trial court sentenced him to the statutorily-required term of community placement following his release from prison.[12]
The sentencing court declined to impose what was, at the time Capello was sentenced, the optional special condition of community placement that he provide a preapproved residence location and living arrangement. Later, when Capello sought transfer to community custody in lieu of earned early release, DOC informed him that before he could be transferred, he would have to obtain a preapproved residence location and living arrangement. Capello filed a PRP and challenged DOC's authority to impose this requirement as a condition of his transfer to community custody because the sentencing court specifically declined to impose it as a condition of his community placement.
In response, DOC argued that it had the inherent authority to require an offender to obtain a preapproved residence location and living arrangement, even where the trial court declined to impose it, because former RCW 9.94A.150(2) authorized DOC to develop a program for the transfer of offenders to community custody in lieu of earned early release. According to DOC, the preapproved residence location and living arrangement requirement is not an additional condition of an offender's sentence, but rather a part of DOC's community custody program. In support of this contention, DOC cited to Policy 350.200, which had been in effect since 1989, and under which if a release address cannot be established, an offender will remain in prison until an acceptable address is established or until the maximum release date. DOC also relied on the 1992 amended version of former RCW 9.94A.120, which made the preapproved residence location and living arrangement a mandatory, rather than optional, condition of community placement unless the sentencing court expressly waived it.[13]
Capello argued that DOC's authority to develop an eligibility program for community custody under former RCW 9.94A.150 did not give it the authority to impose a requirement that the trial court under former RCW 9.94A.120 specifically declined to impose. He also argued that legislative history did not support DOC's position.
This court rejected DOC's argument because it was inconsistent with the structure of the SRA in effect when Capello was sentenced and inconsistent with the legislative history. This court agreed with Capello that DOC did not have the authority to impose the preapproved residence and living arrangement requirement as a condition of community custody under former RCW 9.94A.150, where, under former RCW 9.94A.120, the sentencing court specifically declined to impose the condition. Former RCW 9.94A.120(8)(c) provided that "the court" could order special conditions of community placement. This court interpreted the statutory scheme and concluded that nothing in the SRA specifically authorized DOC to independently impose any of the special conditions set out in the statute. The court concluded:
The statutory framework of RCW 9.94A.120 evinces a legislative intent that the trial court, not DOC, has exclusive discretion to decide whether or not to waive the standard conditions enumerated *525 in RCW 9.94A.120(8)(b), and whether or not to impose the special conditions enumerated in RCW 9.94A.120(8)(c).[[14]]
The court also found that the legislative history of the 1996 amendments to former RCW 9.94A.120, which authorized DOC to impose any appropriate conditions on sex offenders during their community custody terms, further undermined DOC's position. Specifically, the final legislative report for the bill amending the statute[15] stated that under the then-current law, all conditions of supervision had to be imposed at the time of sentencing by the court, and could be subsequently altered only to make them less restrictive. The report also stated that DOC did not have the authority to impose additional conditions of supervision based on information it may learn about the offender while he is incarcerated.
Further, in rejecting DOC's argument that it had the inherent authority to impose the preapproved residence and living arrangement requirement as part of its community custody program, the decision noted that DOC's own directors had stated that requiring a preapproved residence and living arrangement was not part of DOC's community custody program developed pursuant to former RCW 9.94A.150(2).
Accordingly, this court granted Capello's PRP and directed DOC to transfer him to community custody when he was eligible, without the need for a preapproved residence location and living arrangement.[16] DOC sought review of this court's opinion, and the Supreme Court denied review.[17]
DOC subsequently took the position that this court's opinion in Capello was applicable only to Capello and that all offenders affected by the Capello decision were required to file individual PRPs and obtain a court order directing their release. Petitioner Darrell Stewart is one of these offenders.
Stewart's PRP
Stewart was convicted in 1989 following an Alford[18] plea of two counts of first degree attempted kidnapping, two counts of second degree assault, and one count of violation of the Uniform Firearms Act. The trial court imposed an exceptional sentence of 300 months, which included a deadly weapon enhancement, and entered findings of fact and conclusions of law in support of the exceptional sentence.[19] Because first degree kidnapping is a serious violent offense,[20] Stewart was statutorily required to serve a term of community placement following his release from confinement.[21]
The trial court sentenced Stewart to a mandatory one-year term of community placement, to begin either upon completion of his term of confinement or at such time as he is transferred to community custody in lieu of early release. The trial court imposed the five mandatory conditions of community placement and exercised its discretion to impose two of the optional special conditions: that Stewart submit to periodic urinalyses to monitor his drug and alcohol consumption and that he participate in alcohol *526 and drug abuse counseling as directed.[22] As in Capello, DOC recommended the special condition of preapproval of residence and living arrangement for Stewart's community placement. The court did not follow DOC's recommendation and did not impose this condition.
Stewart's current adjusted earned early release date, through application of earned time credit, is February 13, 2006. Otherwise, his release to community placement date is June 15, 2009.
DOC informed Stewart that, in order to be transferred to community custody status, he will have to obtain DOC's approval of his residence location and living arrangement prior to release. On November 1, 2001, Stewart filed a PRP challenging DOC's authority to impose this requirement. DOC responded to Stewart's PRP, arguing, among other things, that it had the inherent authority to impose the requirement of preapproved residence location and living arrangement pursuant to its authority under former RCW 9.94A.150 to administer a program of community placement. DOC also argued that Capello applied only to sex offenders, not serious violent offenders.
On March 4, 2002, this court granted Stewart's PRP, holding, based on Capello, that DOC could not lawfully require Stewart to obtain a preapproved residence and living arrangement because the statutes in effect at the time of his offense gave the power to impose this condition only to the trial court, not to DOC.[23]
On March 22, 2002, DOC filed a motion for reconsideration, relying on the March 14, 2002 enactment into law of SB 6664.[24]
Senate Bill 6664
As enacted, SB 6664 amends RCW 9.94A.728 (formerly RCW 9.94A.150), and took effect on March 14, 2002.[25]
SB 6664 contains five sections.[26] Section 2 of the bill contains the text that amends RCW 9.94A.728. Specifically, section 2 of SB 6664 amends RCW 9.94A.728(2) by adding subsection (c), explicitly requiring DOC, as part of its program for release to the community in lieu of earned release, to require the offender to propose a release plan that includes an approved residence location and living arrangement. The subsection further provides: "All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community."[27]
Section 2 of the bill also adds subsection (d) to RCW 9.94A.728(2). That subsection sets out the reasons for which DOC may deny transfer to community custody status in lieu of earned release time. It further provides that DOC's authority under section 2 "is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement."[28]
Section 1 of SB 6664, along with sections 3 through 5 of the bill, do not contain amendatory language. Rather, these sections contain a statement of legislative intent, a statement of the amendments' application, a severability clause, and the amendments' effective date.
Section 1 of the bill provides:

*527 The legislature has determined in RCW 9.94A.728(2) that the department of corrections may transfer offenders to community custody status in lieu of earned release time in accordance with a program developed by the department of corrections. It is the legislature's intent, in response to: In re: Capello 106 Wash.App. 576 [24 P.3d 1074] (2001), to clarify the law to reflect that the secretary of the department has, and has had since enactment of the community placement act of 1988, the authority to require all offenders, eligible for release to community custody status in lieu of earned release, to provide a release plan that includes an approved residence and living arrangement prior to any transfer to the community.[[29]]
Section 3 of the bill provides that the amendments to RCW 9.94A.728(2)[30] "appl[y] to all offenders with community placement or community custody terms currently incarcerated either before, on, or after March 14, 2002."[31]
Section 4 of the bill is a severability clause: "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected."[32]
Finally, section 5 of the bill provides that the amendments were to take effect immediately on March 14, 2002.[33]

DISCUSSION
The issue we must decide is whether the amendments to RCW 9.94.728(2) (subsections (c) and (d)) have retroactive effect to serious violent offenders and sex offenders sentenced under the SRA statutory scheme in effect prior to 1992. We hold that the amendments cannot have retroactive application because the amendatory act contravenes this court's judicial construction of the statutory scheme in effect prior to 1992 and retroactive application of the amendments violates the separation of powers doctrine.
Standard of Review
Where, as here, a PRP challenges a decision from which the offender has had no previous or alternative avenue for obtaining judicial review, the threshold showing that a PRP alleging constitutional error must show actual and substantial prejudice and that a PRP alleging nonconstitutional error must show a fundamental defect which inherently results in a complete miscarriage of justice[34] do not apply.[35] Rather, we evaluate the PRP by examining only the requirements of RAP 16.4.[36] Under that rule, to be entitled to relief, the petitioner must show that he or she has been restrained and that the restraint was unlawful.[37]
Retroactivity of the 2002 Amendments to RCW 9.94A.728
Generally, a statutory amendment is like any other statute and applies prospectively only.[38] Indeed, a statutory amendment is presumed prospective in application.[39] *528 The presumption against retroactive application of a statute or amendment is an essential thread in the mantle of protection that the law affords the individual citizen. This presumption is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.[[40]]
The strong presumption that an amendment is prospective can be overcome only if it is shown that (1) the legislature intended the amendment to apply retroactively, (2) the amendment is curative, or (3) the amendment is remedial.[41] But, as a further restriction on the retroactive application of an amendment, it is well settled that these exceptions to the general rule of prospective application of an amendment apply only if such retroactive application does not violate any constitutional prohibition.[42]
DOC argues that the amendments apply retroactively because the legislature in Section 3 of SB 6664 expressly states its intent that they do and the Supreme Court decided that similar language should be given retroactive effect in In re Detention of Brooks.[43] Alternatively, it argues that the amendments can be applied retroactively because they are curative and remedial.
Where the legislature expressly intends an amendment to have retroactive application, it may be given retroactive effect, but only if such retroactive application does not violate any constitutional prohibition. We may look to a statute's legislative history when determining the retroactivity issue.[44] Section 3 of SB 6664 states that the amendments to RCW 9.94A.728 apply "to all offenders with community placement or community custody terms currently incarcerated either before, on, or after March 14, 2002."[45]
Additionally, the final bill report, the House bill report, and the Senate bill report all show an express legislative intent that the amendments apply retroactively.[46] The final bill report states: "This act applies retroactively."[47] The House bill report includes this language: "Effective immediately (and retroactively)...."[48] And the Senate bill report states: "This act applies retroactively."[49]
The express legislative intent that the amendments apply retrospectively does not, however, compel the conclusion that the amendments may properly be retroactively applied. As stated, notwithstanding such express legislative intent, the general rule of prospective application of an amendment will apply where retroactive application violates a constitutional prohibition.
In Brooks, the Supreme Court addressed whether a provision similar to section 3 of SB 6664 showed a legislative intent that an amendment apply retroactively. Brooks involved amendments to the sexually violent predator statutes. The bill as enacted contained a provision stating that the amendments applied "to all individuals currently committed or awaiting commitment under chapter 71.09 RCW either on, before, or after the effective date of this act."[50] The Court held that this provision showed a legislative intent that the amendments apply retroactively.[51]
*529 The Court in Brooks determined that the amendment before it did not contravene a construction the Court had placed upon the original statute because, the Court determined, the language in a prior decision that the defendant argued contravened the amendment was dicta. Here, by contrast, the legislature is in effect attempting to overrule Capello by expressly stating that the amendments are retroactive. The intent of the legislature as expressed in Sections 1 and 3 of SB 6664 contravenes this court's construction in Capello of the statutory scheme in effect prior to 1992. Unlike Brooks, this court's statutory analysis and conclusion in Capello that DOC does not have the authority to impose the preapproved residence and living arrangement requirement when the sentencing court did not do so is not dicta.[52]
DOC is incorrect in its assertion that the Capello court's reference to DOC's authority under former RCW 9.94A.150 is dicta. In Capello, we concluded that it was against principles of statutory construction to read former RCW 9.94A.150[53] as allowing DOC to include the preapproved residence location and living arrangement requirement as part of its program for release of an offender to the community in lieu of early release because, under former RCW 9.94A.120, the trial court had the exclusive authority to determine whether to impose such a requirement. Section 1 of SB 6664, the statement of legislative intent, contravenes this construction of the statute by explicitly stating that DOC "has, and has had since enactment of the community placement act of 1988,"[54] such independent authority to impose the requirement. Retroactive application of the amendments to RCW 9.94A.728 would violate the constitutional separation of powers doctrine because the legislative branch of government cannot retroactively overrule a judicial decision which authoritatively construes statutory language.[55]
DOC argues that separation of powers principles are violated only if a legislative enactment contravenes the Supreme Court's, not the Court of Appeals', construction of the original statute. DOC's argument raises an issue that the Supreme Court identified but expressly declined to decide in Brooks. The Court expressly declined to decide "whether amendments to a statute may be applied retroactively where the Legislature expressly intends them to apply retrospectively and where the amendments contravene a judicial construction of the original statute."[56] The Court did not decide this issue because it found that the amendments before it did not contravene a construction the Supreme Court placed on the statute. And, the Court also expressly did not decide whether amendments that contravene a Court of Appeals' construction of a statute may be retroactively applied.[57]
The often-cited statement of the separation of powers principle pertaining to the judicial branch does not limit application of it to the Supreme Court, but rather refers to the judicial branch as a whole: "`[B]oth history and *530 uncontradicted authority make clear that it is emphatically the province of the judicial branch to say what the law is' and to `determine the purpose and meaning of statutes.'"[58] We find no authority for the proposition that separation of powers concerns come into play only when an amendment contravenes the Supreme Court's construction of a statute, especially in light of the fact that the Court of Appeals' interpretation of the original statutes is the only one that exists.[59] The Supreme Court is, without question, the ultimate and final decision maker on the issue presented here. But, pursuant to the enabling legislation for the Court of Appeals, appeals from this court to the Supreme Court are solely within the Supreme Court's discretion to hear.[60] The Supreme Court declined to review our decision in Capello and has not otherwise addressed the issue presented in that case. Accordingly, this court's opinion in In re Capello is the law that must be followed on the issue presented with respect to offenders sentenced before the 1992 amendment to RCW 9.94A.120 that made preapproval of residence and living arrangements a mandatory condition of community placement. Separation of powers principles prevent the legislature from acting as a court of last resort and overruling Capello with respect to those offenders.
Moreover, in cases both prior and subsequent to Brooks,[61] the Supreme Court used language that can be interpreted to mean that the separation of powers analysis is not confined to whether an amendment contravenes the Supreme Court's construction of the statute, but rather includes whether it contravenes a construction by the Court of Appeals as well. For example, in Barstad v. Stewart Title Guaranty Co., Inc., decided after Brooks, the Court stated: "An amendment is curative and remedial if it clarifies or technically corrects an ambiguous statute without changing prior case law constructions of the statute."[62] And, in In re F.D. Processing, Inc., decided before Brooks, the court stated: "Curative amendments will be given retroactive effect if they do not contravene any judicial construction of the statute."[63] In Tomlinson v. Clarke, the Court stated: "When an amendment clarifies existing law and where that amendment does not contravene previous constructions of the law, the amendment may be deemed curative, remedial and retroactive."[64] "`Any other result would make the legislature a court of last resort.'"[65]
On the other hand, the Court has stated that "separation of powers problems are raised when a subsequent legislative enactment is viewed as a clarification and applied *531 retroactively, if the subsequent enactment contravenes the construction placed on the original statute by this court."[66] And, the Court has stated: "Any attempt by the Legislature to contravene retroactively this Court's construction of a statute `is disturbing in that it would effectively be giving license to the [L]egislature to overrule this [C]ourt, raising separation of powers problems.'"[67]
The Court has also stated: "Curative amendments adopted in response to lower court decisions have been applied retroactively."[68] But, the cases the Court cites as examples of this involved situations that differ from the one presented here. For example in Tomlinson v. Clarke, the amendment at issue was enacted in response to a Court of Appeals' decision. That decision conflicted with another Court of Appeals' decision, was inconsistent with a 1977 Supreme Court decision, and was based on a 1925 Supreme Court decision that had been overruled by 1977 Supreme Court opinion. The law at the time of the amendment was unclear. The Court held that the amendment could be retroactively applied because it did nothing more than bring the statute in line with the law as announced by the most recent Supreme Court decision.[69]
Also, in Overton v. Washington State Econ. Assistance Auth.,[70] the statute at issue was ambiguous. The administrative agency involved informed the court that the statute had been the subject of dispute in numerous cases. An amendment to the statute codified the way in which the agency had been interpreting the statute. Although the Supreme Court in McGee Guest Home cited Overton as an example of the retroactive application of a statute in response to a lower court decision, it is unclear from the opinion in Overton what decision the amendment was in response to. In any event, Overton did not present the situation that is presented here, namely, a legislative amendment that squarely contravenes the judicial construction of the unambiguous statute it amended.
We conclude that the separation of powers doctrine is violated if the amendments to RCW 9.94A.728 are retroactively applied to offenders sentenced prior to the 1992 amendment to former RCW 9.94A.120 because such retroactive application contravenes this court's construction of the original statute, which must be followed.[71]
DOC also argues that the amendments to RCW 9.94A.728 may be retroactively applied because they are curative. We disagree.
There is a distinction between amendments that clarify ambiguous statutes and amendments that substantively change unambiguous statutes. Legislative clarifications, or "curative" amendments, interpret ambiguous statutes and are generally retroactive and effective from the original date of the statute.[72] Legislative amendments that are not merely curative, however, substantively change unambiguous statutes.[73]
[L]egislative enactments which respond to judicial interpretations of a prior statute, and which materially and affirmatively change that prior statute, are not clarifications of original legislative intent. Rather, *532 such enactments are amendments to the statute itself.[[74]]
A new legislative enactment is presumed to be an amendment rather than a clarification of existing law.[75] And, where the statutory language is not ambiguous, the court "presumes an amendment to the statute constitutes a substantive change in the law, and the amendment presumptively is not retroactively applied."[76] The legislature states in Section 1 of SB 6664 that its intent in enacting the amendments to RCW 9.94A.728 was to clarify the law. However, the fact that amendments, or their legislative history, state that, by enacting them, the legislature intended to "clarify" the law does not, in and of itself, make the amendments curative.[77] If a change effected by an amendment is substantive, the general rule of prospective application applies.[78]
After this court's decision in Capello, the law was not ambiguous as to which entity the trial court or DOC had the authority to require an offender to obtain DOC approval of his or her residence and living arrangement prior to release to the community. As we held in Capello, former RCW 9.94A.120 placed the authority to impose such condition with the trial court and gave the trial court the sole discretion as to whether to impose it. The statute did not give DOC this authority. Nor did the pre-amendment version of RCW 9.94A.728 or any other provision of the SRA give DOC the authority to determine whether such condition could be a part of the terms of an offender's community placement. The amendments substantively changed the law by conferring on DOC the authority to require offenders to obtain preapproval and further stated that DOC's authority in this regard is independent of any court-ordered condition of sentence or any statute regarding conditions for community placement or community custody.[79] Prior to the 2002 amendments, there was nothing to indicate DOC had any such independent authority.[80] We reject DOC's argument, as did the court in Capello, that its authority to impose the preapproved residence and living arrangement requirement is inherent in its authority to develop a program for transfer of an offender to community custody status in lieu of earned early release time and that this authority is independent of the trial court's authority to impose the requirement as a condition of community placement.[81] Because the original statute was not ambiguous, particularly after Capello, and because the amendments substantively changed the law, the general rule of prospective application must apply.[82]

*533 CONCLUSION
The 2002 amendments to RCW 9.94A.728 substantively changed the unambiguous law that existed before the amendments and after our decision in Capello. The amendments may, therefore, have prospective application only. Notwithstanding the legislative intent that the amendments be applied retroactively, the separation of powers doctrine prevents the legislature from effecting a retroactive change in the law that contravenes this court's construction of the original statute. We deny DOC's motion for reconsideration of our decision granting Stewart's PRP and direct DOC to transfer him to community custody without the need for a preapproved residence location and living arrangement.[83]
KENNEDY and BAKER, JJ., concur.
NOTES
[1] 106 Wash.App. 576, 24 P.3d 1074, rev. denied, 145 Wash.2d 1006, 37 P.3d 292 (2001).
[2] In re Personal Restraint of Stewart, 110 Wash. App. 1050, 2002 WL 339352 (2002).
[3] Former RCW 9.94A.120(8)(b) (1988).
[4] Former RCW 9.94A.120(8)(b)(i)-(iv) (1988).
[5] Former RCW 9.94A.120(8)(c)(i)-(vi) (1988).
[6] Former RCW 9.94A.120(8)(c)(v) (1988).
[7] Former RCW 9.94A.120(8)(b)(vi) (1992).
[8] Former RCW 9.94A.150(2) (1988).
[9] Capello, 106 Wash.App. at 579, 24 P.3d 1074.
[10] 106 Wash.App. 576, 24 P.3d 1074.
[11] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[12] See former RCW 9.94A.120(8)(b).
[13] Former RCW 9.94A.120(8)(b)(vi).
[14] Capello, 106 Wash.App. at 583-84, 24 P.3d 1074.
[15] Substitute Senate Bill 6274.
[16] While the court acknowledged that the requirement is rational and prudent, under the statutory scheme in effect at the time Capello was sentenced, the trial court was not required to impose this requirement:

As DOC argues, the preapproved residence requirement is both rational and prudent. When releasing a convicted sex offender into the community, it makes sense to discourage the possibility of recidivism by preventing the offender from living in an inappropriate situation. It is not clear why the trial court did not exercise its discretion to impose this condition, but the only relevant fact is that the condition was not imposed.
Capello, 106 Wash.App. at 585, 24 P.3d 1074.
[17] 145 Wash.2d 1006, 37 P.3d 292 (2001).
[18] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[19] The grounds upon which the court based the exceptional sentence were Stewart's future dangerousness and the court's finding that the standard range sentence was clearly too lenient.
[20] Former RCW 9.94A.030(24) (1988).
[21] Former RCW 9.94A. 120(8)(b) (1988).
[22] Former RCW 9.94A. 120(8)(c)(i)-(vi).
[23] In re Personal Restraint of Stewart, 110 Wash. App. 1050. The court rejected DOC's argument that Capello applies only to sex offenses, noting that the offense in Capello was both a sex offense and a serious violent offense and that former RCW 9.94A.120(8)(b) applied to both sex offenses and serious violent offenses.
[24] We appointed counsel for Stewart to respond to DOC's motion for reconsideration, requested additional briefing, and scheduled oral argument.
[25] Laws of 2002, ch. 50.
[26] Sections 1, 3, 4, and 5 of SB 6664 are uncodified sections of Chapter 50 of the Laws of 2002. These sections will hereinafter be referred to by their section numbers.
[27] Laws of 2002, ch. 50, § 2 (adding RCW 9.94A.728(2)(c)).
[28] Laws of 2002, ch. 50, § 2 (adding RCW 9.94A.728(2)(d)).
[29] Laws of 2002, ch. 50, § 1.
[30] Subsections (c) and (d),
[31] Laws of 2002, ch. 50, § 3.
[32] Laws of 2002, ch. 50, § 4.
[33] Laws of 2002, ch. 50, § 5 (stating that the bill took effect immediately because it was "necessary for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions...").
[34] In re Cook, 114 Wash.2d 802, 810, 812, 792 P.2d 506 (1990).
[35] In re Personal Restraint of Cashaw, 123 Wash.2d 138, 148-49, 866 P.2d 8 (1994).
[36] Id., 123 Wash.2d at 149, 866 P.2d 8; Capello, 106 Wash.App. at 580-81, 24 P.3d 1074.
[37] RAP 16.4(a); see RAP 16.4(b) (defining "restraint"), RAP 16.4(c) (enumerating the reasons for which a restraint is unlawful).
[38] In re Detention of Brooks, 145 Wash.2d 275, 284, 36 P.3d 1034 (2001).
[39] State v. Smith, 144 Wash.2d 665, 673, 30 P.3d 1245 (2001), as corrected, 39 P.3d 294 (2002); Robin Miller Const. Co., Inc. v. Coltran, 110 Wash.App. 883, 890, 43 P.3d 67 (2002).
[40] (Citations and internal quotations omitted.) State v. Smith, 144 Wash.2d at 673, 30 P.3d 1245.
[41] Id.
[42] McGee Guest Home, Inc. v. Dep't of Social and Health Services, 142 Wash.2d 316, 324, 12 P.3d 144 (2000); State v. Cruz, 139 Wash.2d 186, 191, 985 P.2d 384 (1999); In re F.D. Processing, Inc., 119 Wash.2d 452, 460, 832 P.2d 1303 (1992).
[43] 145 Wash.2d 275, 36 P.3d 1034 (2001).
[44] Barstad v. Stewart Title Guaranty Co., Inc., 145 Wash.2d 528, 537, 39 P.3d 984 (2002).
[45] Laws of 2002, ch. 50, § 3.
[46] Legislative reports are relevant to determining legislative intent regarding retroactivity. McGee Guest Home, 142 Wash.2d at 325, 12 P.3d 144.
[47] Final Bill Report, SB 6664, at 1.
[48] House Bill Report, SB 6664, at 2.
[49] Senate Bill Report, SB 6664, at 2.
[50] Laws of 2001, ch. 286, § 14 (quoted in Brooks, 145 Wash.2d at 285, 36 P.3d 1034).
[51] Stewart does not address the similarity of the provisions at issue here to those at issue in Brooks. Rather, he argues that section 3 of SB 6664 is confusing because it uses both "currently" and "before, on, or after the effective date of this act." He proposes several different ways in which the provision could be interpreted. The legislature's intent, as clearly expressed in section 3 of the bill, is that the amendments apply to offenders who have been sentenced to community placement or community custody and are currently incarcerated, and who were incarcerated before the amendments took effect or on the day the amendments took effect or on any day after the amendments took effect.
[52] See DCR, Inc. v. Pierce County, 92 Wash.App. 660, 683, n. 16, 964 P.2d 380 (1998), cert. denied, 529 U.S. 1053, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000) (statements in a judicial opinion that do not relate to an issue before the court and are not necessary to decide the case constitute dicta and need not be followed).
[53] Now RCW 9.94A.728.
[54] Laws of 2002, ch. 50, § 1.
[55] Although the separation of powers doctrine is not explicitly enunciated in either the state or federal constitutions, the doctrine is "universally recognized as deriving from the tripartite system of government established in both constitutions." State v. Blilie, 132 Wash.2d 484, 489, 939 P.2d 691 (1997); see also State v. Wadsworth, 139 Wash.2d 724, 735, 991 P.2d 80 (2000). It is, therefore, a "constitutional prohibition" that cannot be violated by the retroactive application of a statutory amendment.

There is, however, no question the amendments apply prospectively.
[56] Brooks, 145 Wash.2d at 285-86, 36 P.3d 1034.
[57] Id. at 286, 36 P.3d 1034.
[58] Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 812, 16 P.3d 583 (2001) (quoting Overton v. Wash. State Econ. Assistance Auth., 96 Wash.2d 552, 555, 637 P.2d 652 (1981)).
[59] The Supreme Court denied review in Capello. See 145 Wash.2d 1006, 37 P.3d 292 (2001).
[60] RCW 2.06.030.
[61] The Court's language in Brooks implies that the issue of whether an amendment that contravenes this court's construction of the original statute, as opposed to the Supreme Court's construction, can be retroactively applied has not been decided before.
[62] (Emphasis added.) 145 Wash.2d at 537, 39 P.3d 984.
[63] (Emphasis added.) 119 Wash.2d at 461, 832 P.2d 1303.
[64] (Emphasis added.) 118 Wash.2d 498, 510-11, 825 P.2d 706 (1992) (noting that this is particularly true where an amendment is enacted during a controversy regarding the meaning of the law); see also State v. Dunaway, 109 Wash.2d 207, 216, n. 6, 743 P.2d 1237 (1987) ("Nevertheless, even a clarifying enactment cannot be applied retrospectively when it contravenes a construction placed on the original statute by the judiciary."); Washington Waste Sys. v. Clark County, 115 Wash.2d 74, 79, 794 P.2d 508 (1990) ("legislation will be deemed curative if its purpose was to clarify an existing ambiguity and it overrules no case law"); State v. Jones, 110 Wash.2d 74, 82, 750 P.2d 620 (1998) ("`[w]here an original enactment was ambiguous and a clarifying amendment or technical correction contravenes no construction placed on the original statute, the amendment may be deemed curative, remedial, and retroactive.'") (quoting State v. Taylor, 47 Wash.App. 118, 123, 734 P.2d 505 (1987)).
[65] State v. Dunaway, 109 Wash.2d at 216, n. 6, 743 P.2d 1237 (quoting 1A C. DALLAS SANDS, STATUTES AND STATUTORY CONSTRUCTION § 27.04 (Norman J. Singer ed., 4th (rev.) ed.1985)).
[66] Overton, 96 Wash.2d at 558, 637 P.2d 652.
[67] Magula, 131 Wash.2d at 182, 930 P.2d 307 (quoting Johnson v. Morris, 87 Wash.2d 922, 926, 557 P.2d 1299 (1976)).
[68] McGee Guest Home, 142 Wash.2d at 325, 12 P.3d 144.
[69] Tomlinson, 118 Wash.2d at 511, 825 P.2d 706.
[70] 96 Wash.2d 552, 637 P.2d 652.
[71] We agree with the court in Capello that the preapproved residence and living arrangement requirement is rational and prudent. But, those offenders affected by our decision will remain subject to supervision by DOC while on community placement.
[72] Marine Power & Equip. Co. v. Washington State Human Rights Comm'n Hearing Tribunal, 39 Wash.App. 609, 614-15, 694 P.2d 697 (1985); see also Barstad, 145 Wash.2d at 539, 39 P.3d 984 (an amendment that does not substantively change the law but rather merely confirms industry practice and clarifies legislative intent may be applied retroactively).
[73] Marine Power, 39 Wash.App. at 615, 694 P.2d 697.
[74] Id. at 616, 694 P.2d 697.
[75] Id. at 615, 694 P.2d 697.
[76] In re F.D. Processing, Inc. 119 Wash.2d 452, 462, 832 P.2d 1303 (1992).
[77] State v. Smith, 144 Wash.2d at 672, 30 P.3d 1245 (holding that an amendment was not curative even though the statutory note said that the amendment was "intended to cure any ambiguity....").
[78] Magula v. Benton Franklin Title Co., Inc., 131 Wash.2d 171, 182, 930 P.2d 307 (1997); see also Overton v. Washington State Econ. Assistance Auth., 96 Wash.2d 552, 557, 637 P.2d 652 (1981) (generally, an amendment of an unambiguous statute indicates a material change in the law that should have prospective application only).
[79] See RCW 9.94A.728(d).
[80] See In re Capello, 106 Wash.App. at 583, 24 P.3d 1074 ("There is nothing in the SRA specifically authorizing DOC to independently impose any of the statutorily listed special conditions of community placement.").
[81] Capello, 106 Wash.App. at 584, 24 P.3d 1074 ("DOC cannot avoid RCW 9.94A.120 by attempting to redefine the preapproved residence requirement as part of its program rather than a condition of community placement. It is a fundamental tenet of statutory construction that every provision of a statute must be read in conjunction with its related provisions to determine legislative intent and to achieve a harmonious and unified statutory scheme. There is no meaningful distinction between a preapproved residence requirement imposed as a condition of community placement by the trial court under RCW 9.94A.120, and the same requirement imposed by DOC as part of its policy for administering the community custody program under RCW 9.94A.150.").
[82] DOC also argues that the 2002 amendments to RCW 9.94A.728 may be applied retroactively because they are remedial. An amendment is remedial when "it relates to practice, procedure or remedies, and does not affect a substantive or vested right." In re Mota, 114 Wash.2d 465, 471, 788 P.2d 538 (1990). A remedial statute can be applied retroactively only when doing so would not affect a substantive or vested right. State v. T.K., 139 Wash.2d 320, 332-33, 987 P.2d 63 (1999). We need not decide whether the amendments are remedial because, even assuming they are, they cannot be retroactively applied because, as discussed, retroactive application would violate constitutional separation of powers principles.
[83] We need not reach Stewart's arguments that retroactive application of the amendments to him would violate his constitutional rights under the ex post facto, due process, equal protection, or double jeopardy clauses.