[No. 41808-8-II.   Division Two.   October 2, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL RALPH MAPLES, *Appellant*.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney,* and *Thomas Charles Roberts, Deputy,* for respondent.

¶1 WORSWICK, C.J. — Daniel Maples appeals two community placement conditions the trial court imposed during a resentencing hearing of his 2008 second degree murder conviction.[1] We agree that the 1988 statute in effect when Maples committed his offense did not authorize the trial court to impose the community placement condition of a preapproved placement address. Later retroactive amendments, however, authorized the second condition that he engage in affirmative acts to ensure compliance with his placement conditions. Accordingly, we remand to the trial court to strike the preapproved placement address condition.

## FACTS

¶2 In July 2008, following a jury trial, the superior court sentenced Maples to 342 months' incarceration for the 1988 second degree murder of Christine Blais. Maples appealed, and this court affirmed the conviction but remanded for a sentencing hearing.

¶3 In February 2011, the sentencing court recalculated Maples' offender score and imposed a 260-month sentence. Additionally, the sentencing court ordered Maples to serve 12 months of community placement with multiple conditions. The two conditions at controversy in this appeal are:

> (7) perform affirmative acts necessary to monitor compliance with the orders of the court as required by DOC [Department of Corrections]; and
>
> (8) for sex offenses, submit to electronic monitoring if imposed by DOC. The residence location and living arrangements are subject to the prior approval of DOC while in community placement or community custody.

Clerk's Papers (CP) at 128.

---

[1] *State v. Maples*, noted at 157 Wn. App. 1065, 2010 WL 3639919, 2010 Wash. App. LEXIS 2128.

## DISCUSSION

### I. Community Custody Conditions

¶4 In 1988, former RCW 9.94A.120(8)(b) (1988) imposed five community placement conditions unless the sentencing court waived them.[2] In addition, the sentencing court had authority to impose additional conditions under former RCW 9.94A.120(8)(c) (1988).[3] Neither condition at issue here is explicitly one of these.

---

[2] Former RCW 9.94A.120(8)(b) provided:

When a court sentences a person to a term of total confinement to the custody of the department of corrections for an offense categorized as a sex offense, a serious violent offense, assault in the second degree, any crime against a person where it is determined in accordance with RCW 9.94A.125 that the defendant or an accomplice was armed with a deadly weapon at the time of commission, or any felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 1988, unless a condition is waived by the court, the sentence shall include, in addition to the other terms of the sentence, a one-year term of community placement on the following conditions:

(i) The offender shall report to and be available for contact with the assigned community corrections officer as directed;

(ii) The offender shall work at department of corrections-approved education, employment, and/or community service;

(iii) The offender shall not consume controlled substances except pursuant to lawfully issued prescriptions;

(iv) An offender in community custody shall not unlawfully possess controlled substances; and

(v) The offender shall pay community placement fees as determined by the department of corrections.

Laws of 1988, ch. 153, § 2.

[3] Former RCW 9.94A.120(8)(c) provided:

The court may also order any of the following special conditions:

(i) The offender shall remain within, or outside of, a specified geographical boundary;

(ii) The offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals;

(iii) The offender shall participate in crime-related treatment or counseling services;

(iv) The offender shall not consume alcohol;

(v) The residence location and living arrangements of a sex offender shall be subject to the prior approval of the department of corrections; or

(vi) The offender shall comply with any crime-related prohibitions.

Laws of 1988, ch. 153, § 2.

## A. *Preapproved Placement Address*

¶5 Maples argues that because he was not a sex offender, the trial court lacked authority to order a preapproved placement address. He relies on *In re Personal Restraint of Capello*, 106 Wn. App. 576, 583-84, 24 P.3d 1074 (2001), wherein Division One of this court held that absent a trial court order that imposed a preapproved release address condition, DOC had no authority to impose such a condition under the 1991 version of the community custody act. The court held, though, that the trial court had statutory authority to impose such a condition.[4] *Capello*, 106 Wn. App. at 583.[5]

¶6 The 2002 legislature responded to the *Capello* decision, stating unequivocally that DOC's authority to require preapproval of the prisoner's residence plan had always existed, dating back to the 1988 statute. The legislature stated that it was responding to the *Capello* decision and clarifying that the DOC secretary "has, and has had since enactment of the community placement act of 1988, the authority to require all offenders, eligible for release to community custody status in lieu of earned release, to provide a release plan that includes an approved residence and living arrangement prior to any transfer to the community." LAWS OF 2002, ch. 50, § 1. The legislature also stated that this enactment applies to all offenders "either before, on, or after [March 14, 2002]." LAWS OF 2002, ch. 50, § 3.

¶7 Division One concluded that this legislation violated the separation of powers doctrine in *In re Personal*

---

[4] Capello committed a serious violent offense that was also a sex offense so the appellant did not argue that former RCW 9.94A.120(8)(c)(v) did not apply to him. Maples committed a serious violent offense that was not a sex offense and thus can raise that claim.

[5] The *Capello* court also noted that the 1992 version of the community custody act made the preapproved residency condition a mandatory rather than special condition. 106 Wn. App. at 582. But because Capello committed his offense in 1991, the court applied the 1991 version, which is the same version that applies to Maples.

*Restraint of Stewart*, 115 Wn. App. 319, 331, 75 P.3d 521 (2003). It held that these "amendments cannot have retroactive application because the amendatory act contravenes this court's judicial construction of the statutory scheme in effect prior to 1992 and retroactive application of the amendments violates the separation of powers doctrine." 115 Wn. App. at 331. The *Stewart* court relied on a series of cases holding that although the legislature can clarify a previous enactment, the enactment cannot apply retrospectively when it contravenes a judicial construction of the statute.[6]

¶8 For our purposes, we focus on the part of the 2002 enactments that expanded the preapproved residency requirement to include all serious violent offenders. This was a substantive change to the law, not a clarification or remediation. Because we presume new legislation is an amendment not a clarification of existing law and because the 2002 enactments invoked substantive changes to the statutes, we hold that they did not apply retroactively. *In re F.D. Processing Inc.*, 119 Wn.2d 452, 462, 832 P.2d 1303 (1992). Following this rule and the holding in *Stewart*, we conclude that the sentencing court did not have authority to impose such a community custody condition on Maples.

¶9 The State argues that the *Stewart* decision is no longer good law, relying on *Hale v. Wellpinit School District No. 49*, 165 Wn.2d 494, 498, 508, 198 P.3d 1021 (2009). There our Supreme Court upheld a law passed in direct response to the court's decision in *McClarty v. Totem Electric*, 157 Wn.2d 214, 137 P.3d 844 (2006). Similar to here, the legislature acknowledged the Supreme Court's

---

[6] *See Barstad v. Stewart Title Guar. Co.*, 145 Wn.2d 528, 537, 39 P.3d 984 (2002) ("An amendment is curative and remedial if it clarifies or technically corrects an ambiguous statute without changing prior case law constructions of the statute."); *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 461, 832 P.2d 1303 (1992) ("Curative amendments will be given retroactive effect if they do not contravene any judicial construction of the statute."); *State v. Dunaway*, 109 Wn.2d 207, 216 n.6, 743 P.2d 1237 (1987) ("[E]ven a clarifying enactment cannot be applied retrospectively when it contravenes a construction placed on the original statute by the judiciary.").

decision, expressed its disagreement with that decision, declared a new statutory definition of "disability," and explicitly declared that this new definition applied to causes of action occurring before the *McClarty* decision. *Hale*, 165 Wn.2d at 498, 508. The court, while acknowledging the *Stewart* decision, observed that it had never before addressed this separation of powers issue. *Hale*, 165 Wn.2d at 508. The court then looked to the legislative action and decided that it did not infringe on the judicial branch because "the legislature acted wholly within its sphere of authority to make policy, to pass laws, and to amend laws already in effect." *Hale*, 165 Wn.2d at 509. The court observed, "The legislature was careful not to reverse our decision in *McClarty* nor did the legislature interfere with any judicial function. The legislature has not threatened the independence or integrity or invaded the prerogatives of the judicial branch." The court then held that the legislature's adoption of the law did not violate the separation of powers doctrine. *Hale*, 165 Wn.2d at 510.

¶10 Notably, the *Hale* decision did not overrule *Stewart*, nor could it, as *Stewart* rested on the bedrock principle that the legislature cannot contravene an existing judicial construction of a statute. Our Supreme Court discussed *Hale* and *Stewart* in *Lummi Indian Nation v. State*, 170 Wn.2d 247, 241 P.3d 1220 (2010), and again did not overrule *Stewart*, reaffirmed its holding in *Hale*, and found that a legislative amendment did not violate the separation of powers doctrine. *Lummi Indian Nation*, 170 Wn.2d at 262.

¶11 Here, the sentencing court erred in requiring a preapproved release address as a community custody condition for a non-sex-offense. The *Stewart* holding and our observation that the 2002 amendments made substantive changes to the law compels us to hold that these amendments apply prospectively only, that they do not apply to Maples, and that he is entitled to have the preapproved address community custody condition stricken from his judgment and sentence.

## B. *Compliance Monitoring*

█ ¶12 We reach a different result, however, with Maples's challenge to the condition that he "perform affirmative acts necessary to monitor compliance with the orders of the court as required by DOC." CP at 128. He argues that this was not a mandatory or special condition in 1988 and thus the sentencing court lacked authority to impose this condition. But in 1997, the legislature added this requirement to two statutes, RCW 9.94A.030(11) and RCW 9.94A.120(14). LAWS OF 1997, ch. 144, §§ 1, 2. And in *State v. Riles*, 135 Wn.2d 326, 342-43, 957 P.2d 655 (1998), our Supreme Court held that the 1997 amendments were intended to clarify the statutes and resolve any ambiguities as to their meaning. Thus in enacting these 1997 amendments, the legislature properly exercised its legislative function and did not violate the separation of powers doctrine. Hence, the sentencing court here properly imposed this compliance monitoring condition on Maples.

## II. STATEMENT OF ADDITIONAL GROUNDS

¶13 Maples also seeks to modify the cost bill from his original appeal, stating, "Objection to last appeals cost bill as I was billed after winning my appeal in which I substantially prevailed on sentencing issue reducing sentence by 10 yrs." Statement of Additional Grounds at 1.

█ ¶14 But Maples waived any objections he had by not exercising his right to object within 10 days or by seeking timely appellate review. RAP 14.5, 14.6(b).

¶15 We remand for the sentencing court to strike community placement condition 8 from Maples's judgment and sentence. We otherwise affirm.

HUNT and VAN DEREN, JJ., concur.

After modification, further reconsideration denied December 4, 2012.