[No. 58275-1. En Banc. July 23, 1992.]

CERTIFICATION FROM THE UNITED STATES
BANKRUPTCY COURT FOR THE WESTERN DISTRICT
OF WASHINGTON
IN
*In the Matter of* F.D. PROCESSING, INC., *Debtor.*

*Hatch & Leslie,* by *John R. Rizzardi,* for plaintiff Western Washington Milk Producers.

*Timothy J. Carlson, Eric R. Hultman,* and *Halverson & Applegate, P.S.; Michael Loft* and *Layman, Loft, Arpin & White,* for plaintiff Central Washington Producers.

*Miller, Nash, Wiener, Hager & Carlsen, Steven M. Hedberg,* and *Peter S. Holmes,* for defendants.

JOHNSON, J. — F.D. Processing, Inc., is the subject of Chapter 7 bankruptcy proceedings in federal court. The federal court has certified to us the question whether liens filed by milk producers against F.D. Processing are valid under state law. We answer this question in the negative. The statutes in effect when the milk was delivered did not authorize the liens. Moreover, the statutory amendment in 1991 that expressly authorizes liens for milk deliveries does not retroactively apply to the facts of this case.

F.D. Processing, Inc., conducting business as Foremost Dairies Northwest (Foremost), was organized to purchase certain Washington assets of the Carnation Company on April 1, 1989.[1] Since that acquisition, Foremost has been involved in processing raw milk into pasteurized milk, butter, cottage cheese and other dairy products.

In 1989, U.S. Bank of Washington, National Association (U.S. Bank) extended approximately $25 million in credit to Foremost. U.S. Bank has a perfected security interest in Foremost's inventory and accounts receivable to secure the loan.

---

[1] The facts we recite in this case are taken from the federal court's stipulated order regarding the facts as well as from the exhibits forwarded from the federal court. The parties have stipulated to some of the facts without qualification, while they stipulate to others only for purposes of the present certification.

On July 10, 1990, U.S. Bank filed a complaint in King County Superior Court to foreclose on the loan and collateral. The file in that case was immediately sealed pursuant to the joint application of Foremost and U.S. Bank. On July 16, 1990, the Superior Court entered a stipulated judgment of foreclosure in an amount over $24 million.

On November 9, 1990, the Superior Court granted U.S. Bank's motion to appoint a receiver for Foremost. On that date, Foremost owed approximately $2.2 million for milk it had received since October 1, 1990, from dairy farms and dairy cooperatives in the Pacific Northwest. The parties have referred to these farms and cooperatives as the "milk producers". When the milk producers were not paid for raw milk delivered between October 1 and November 8, they filed liens against Foremost under the provisions of RCW 60.13.

The validity of the milk producers' liens was first challenged in the King County Superior Court action. Before a hearing could be held, however, three unsecured creditors filed an involuntary Chapter 7 bankruptcy petition against Foremost.

The effect of this bankruptcy filing, for purposes of this case, was to transfer to the federal court the litigation over the relative priority of the interests of U.S. Bank and the milk producers. The milk producers argued to the federal court that under RCW 60.13 their liens are valid and entitled to priority over the secured interest of U.S. Bank. U.S. Bank contended that the liens are not valid under Washington law.

The federal court certified to this court the following question:

> Are milk producers who have not been paid for raw milk delivered to F.D. Processing, or its customers, entitled to processor and preparer liens under RCW 60.13.020 or 60.13.030?

■ We will not address two of the issues raised by this question, as they have not been briefed by the parties. First, the parties have not presented any arguments regarding liens for milk delivered to Foremost's customers. Second, the milk producers have not argued that they are entitled to *preparer* liens under RCW 60.13.030; the milk producers

have argued only that they are entitled to *processor* liens under RCW 60.13.020.[2] The two statutes and the two liens are distinct; the liens apply in different situations and have different rules.[3] This court generally does "not engage in conjectural resolution of issues present, but not briefed." *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 785, 819 P.2d 370 (1991).

The analysis of processor liens in this case is essentially twofold. Did RCW 60.13 as it existed in 1990 — at the time of the milk deliveries — enable the producers to claim processor liens? If not, did the subsequent amendment to RCW 60.13 in 1991 — expressly extending lien protection to include the delivery of milk products — apply retroactively to cover the present case?

## I
### The Statutes in Effect in 1990
### Did Not Authorize the Liens

The statute governing processor liens is RCW 60.13.020, which provides in relevant part as follows:

> Starting on the date a producer delivers any *agricultural product* to a processor or conditioner, the producer has a first priority statutory lien, referred to as a "processor lien." . . . The processor lien attaches to the agricultural products[,] . . . to the processor's or conditioner's inventory, and to the processor's or conditioner's accounts receivable. . . .

(Italics ours.) If a producer files a statement with the Department of Licensing within 20 days of the date when pay-

---

[2] The parties' only references to RCW 60.13.030 have been with respect to how RCW 60.13.020 should be construed.

[3] RCW 60.13.020 authorizes liens only against "processors", while RCW 60.13-.030 authorizes liens only against "preparers". The Legislature has provided different definitions for these two terms. *Compare* former RCW 60.13.010(1) (cross-referencing RCW 20.01.010) *with* former RCW 60.13.010(2). Additionally, the two liens apply with respect to the delivery of different products. The Legislature has provided a specific definition of "agricultural product" in the context of processor liens under RCW 60.13.020, but not in the context of preparer liens under RCW 60.13.030. Indeed, preparer liens might only apply to the delivery of grains, hay and straw products. Moreover, the procedures for the two liens are not the same. *See* RCW 60.13.060(1). While there is potentially some overlap between preparer liens and processor liens, there can be no doubt that the two liens are distinct and must be separately analyzed.

ment becomes delinquent, the processor lien is superior even to an earlier perfected security interest in the same collateral. RCW 60.13.050.

The pivotal question addressed by the parties is whether milk qualifies as an "agricultural product". The statutes in place in 1990 defined "agricultural product" as follows:

> "Agricultural product" means any unprocessed horticultural, vermicultural and its byproducts, viticultural, berry, poultry, poultry product, grain, bee, or other agricultural products, and includes mint or mint oil processed by or for the producer thereof and hay and straw baled or prepared for market in any manner or form and livestock. *When used in RCW 60.13.020, "agricultural product" means horticultural, viticultural, and berry products, hay and straw, and turf and forage seed and applies only when such products are delivered to a processor or conditioner in an unprocessed form.*

(Italics ours.) Former RCW 20.01.010(3), as cross-referenced in former RCW 60.13.010(1).

This statute supplies a broad definition that applies to most agricultural statutes, but the italicized portion of the statute provides a far more limited definition that applies specifically to RCW 60.13.020, which is the statute currently before the court. The definition that applies to this case is limited to horticultural products,[4] viticultural products,[5] berry products, hay and straw, and turf and forage seed. Milk does not fall within any of these categories.

█ In light of the statutory definition, it appears that the Legislature very deliberately intended that only certain "agricultural products" would be covered by the processor liens. Missing from this definition are many products commonly considered as agricultural, including beef, pork and poultry products. Thus, although milk would qualify as an "agricultural product" by a common understanding of that

---

[4]The term "horticultural" is not defined in the relevant statutes, but horticulture generally means the growing of fruits, vegetables, flowers or ornamental plants. *Webster's Third New International Dictionary* 1093 (1986).

[5]The term "viticultural" is not defined in the relevant statutes, but viticulture generally means the growing of grapes. *Webster's Third New International Dictionary* 2559 (1986).

term, it does not qualify under the particular statutory definition applicable to this case. A legislative definition prevails over a dictionary definition or common understanding of any given term. *See American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991); *State v. Hickok*, 39 Wn. App. 664, 667, 695 P.2d 136 (1985); 1A N. Singer, *Statutory Construction* §§ 20.08, 27.02 (4th ed. 1985).

■ This court gives effect to the language in an unambiguous statute. *See, e.g., Multicare Med. Ctr. v. Department of Social & Health Servs.*, 114 Wn.2d 572, 582, 790 P.2d 124 (1990). While sometimes the court will give effect to a statute's purpose if its literal language would lead to "absurd results", *see Kirk v. Moe*, 114 Wn.2d 550, 554, 789 P.2d 84 (1990), this principle has no application here. We can only conclude the Legislature's restriction of the applicability of processor liens was deliberate. The Legislature must have been aware that it was greatly narrowing the definition of "agricultural product" in the context of RCW 60.13.020; it enacted this narrow definition in the very same statute that it enacted the far broader definition applicable to the other agricultural statutes.

The milk producers present a number of arguments in an attempt to counter this interpretation of the statute. First, they argue that the provisions of RCW 60.13 are ambiguous. They point primarily to the fact that the statutes in effect in 1990 defined "processor" in terms of "agricultural crop",[6] while the same statutes defined the other key words used in RCW 60.13.020 in terms of "agricultural product". The Legislature has not defined the term "agricultural crop" in any manner in these statutes. We do not know, therefore, whether the Legislature intended "agricultural crop" to have the same limited meaning that "agricultural product" has in the context of processor liens under RCW 60.13.020. Never-

---

[6]The legislation in place in 1990 defined "processor" as follows: "Processor" means any person, firm, company, or other organization that purchases *agricultural crops* from a consignor and that cans, freezes, dries, dehydrates, cooks, presses, powders, or otherwise processes those crops in any manner whatsoever for eventual resale. (Italics ours.) RCW 20.01.010(14), as cross-referenced in former RCW 60.13.010(1).

theless, any ambiguity as to the meaning of "agricultural crop" cannot be extended to the expressly defined term "agricultural product". The Legislature took exacting pains to provide a particular definition of "agricultural product" solely for the purposes of the statute here at issue, RCW 60.13.020. Its application to the present case is unambiguous.[7]

Second, the milk producers present arguments unrelated to the language used in the statute. For example, they argue that milk is generally considered to be an agricultural product; that the Legislature must have intended to extend the lien to dairy products because RCW 15.44 shows a legislative intent to protect the state's dairy industry; and that the milk producers are in a position where they will be harmed if they are not given the protection of a lien. Each of these arguments, however, carries little weight in light of the Legislature's deliberate narrowing of the term "agricultural product" in the context of processor liens.

▇ Because the milk producers cannot point to any language in the definition of "agricultural" product that even arguably includes milk or dairy products, we hold that the statutes in place in 1990 did not authorize processor liens for the delivery of milk.

II

THE 1991 AMENDMENT CANNOT BE
RETROACTIVELY APPLIED

In 1991, the Legislature amended RCW 60.13.010 to define "agricultural products" to include "milk and milk products".[8]

---

[7]The producers also argue that an ambiguity exists in the statutes relating to *preparer* liens and that this ambiguity extends to the *processor* liens at issue in this case. In RCW 60.13.030, the Legislature states that preparer liens are available with respect to grain, hay and straw products, but then in RCW 60.13.035 refers to a notice of a preparer lien for *dairy* products. While this might create an ambiguity as to whether a *preparer* lien is available with respect to dairy products, it does not create an ambiguity in the context of *processor* liens. The two liens, and the statutes creating them, are distinct and founded on different definitions. See footnote 3.

[8]The relevant definition now reads in part: "When used in RCW 60.13.020, 'agricultural product' means horticultural, viticultural, aquacultural, or berry products, hay and straw, *milk and milk products*, or turf and forage seed and

With this amendment, milk producers will have authority to assert liens in future cases. The question in this case, however, is whether the 1991 amendment applies retroactively.

■ As a general rule, an amendment is like any other statute and applies prospectively only. *See Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 47, 785 P.2d 815 (1990). Nevertheless, an amendment may be retroactively applied if the Legislature so intended or if the amendment is "clearly curative". *Howell*, 114 Wn.2d at 47. Additionally, "remedial" amendments may be retroactively applied under certain circumstances. *See In re Mota*, 114 Wn.2d 465, 471, 788 P.2d 538 (1990); *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981).

Finally, even if one of these rules of statutory interpretation calls for retroactive application, retroactivity will be granted only if it does not violate constitutional protections relating to due process and the impairment of contracts. *See Gillis v. King Cy.*, 42 Wn.2d 373, 376, 255 P.2d 546 (1953); 2 N. Singer, *Statutory Construction* §§ 41.03, 41.09, 41.12 (4th ed. 1986).

The parties address all these arguments on retroactivity. Accordingly, a number of issues are presented: Did the Legislature intend a retroactive application? Is the 1991 amendment curative? Is the 1991 amendment remedial? Would retroactivity violate the constitution?

A. Legislative Intent.

The 1991 amendment itself does not expressly provide for a retroactive application. It is silent on the subject.

■ This, however, does not fully answer the question of legislative intent. As the milk producers point out, analysis of legislative intent regarding retroactivity is not restricted to the statute's express language. Intent may also be gleaned from other sources, including from legislative history. *In re Marriage of MacDonald*, 104 Wn.2d 745, 748, 709 P.2d 1196 (1985); *see also Howell*, 114 Wn.2d at 47 (the

---

applies only when such products are delivered to a processor or conditioner in an unprocessed form." (Italics ours.) RCW 60.13.010(1) (Laws of 1991, ch. 174, § 2).

court looks not only to the statute's language, but also to its purpose). *But see Miebach v. Colasurdo*, 102 Wn.2d 170, 180, 685 P.2d 1074 (1984) (holding that retroactivity generally must be expressed).

In this regard, the producers point to Senator Newhouse's statement of the purpose behind the 1991 amendment:

> Mr. President, ladies and gentlemen, when we created the processor preparer lien in the 1983 legislation, I believe, we used the definition from the Commission Merchant's Act of Agricultural Products. Inadvertently, then, we left out, I think, dairy products as being a farm product and when the processor had financial difficulties last year — about six months ago — we found that the producer had no claim against that product, because we had neglected to include dairy products in the definition of farm products. Therefore, this legislation is necessary to correct what was missing in the previous law.

Federal court's stipulated order, exhibit 9.

█ This statement does not support the milk producers' position for two reasons. First, the comments of a single legislator are generally considered inadequate to establish legislative intent. *See Yakima v. International Ass'n of Fire Fighters, Local 469*, 117 Wn.2d 655, 677, 818 P.2d 1076 (1991); *Convention Ctr. Coalition v. Seattle*, 107 Wn.2d 370, 375, 730 P.2d 636 (1986). Second, the statement does not directly indicate any intent as to retroactivity. It indicates that the Legislature is correcting what was previously missing, but it does not state that the Legislature specifically intended retroactivity.

The milk producers have not shown that the Legislature intended retroactive application of the 1991 amendment.

B. Retroactivity of Curative Amendments.

██ An amendment is curative only if it clarifies or technically corrects an ambiguous statute. *State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d 620 (1988); *see Washington Waste Sys., Inc. v. Clark Cy.*, 115 Wn.2d 74, 78, 794 P.2d 508 (1990); *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 557, 637 P.2d 652 (1981). Curative amendments will be given retroactive effect if they do not contravene any judicial construction of the statute. *Jones*, 110 Wn.2d at 82;

*Washington Waste Sys.*, 115 Wn.2d at 78. The amendment must be "clearly curative" for it to be retroactively applied. *Howell*, 114 Wn.2d at 47.

■ As we have already held, the application of RCW 60.13 to this case, and particularly the definition of "agricultural product", is unambiguous. Where ambiguity is lacking in statutory language, this court presumes an amendment to the statute constitutes a substantive change in the law, and the amendment presumptively is not retroactively applied. *See Overton*, 96 Wn.2d at 557.

The milk producers ask this court to declare the statute curative in light of Senator Newhouse's statement quoted above. They argue Senator Newhouse's comment proves the original statute did not accurately reflect legislative intent, and the amendment was intended to cure the misstatement.

We disagree. The statement reflects merely one legislator's views, which do not necessarily mirror that of the Legislature as a whole. *See Yakima v. International Ass'n of Fire Fighters, Local 469, supra; Convention Ctr. Coalition v. Seattle, supra.* Additionally, the statement itself is somewhat qualified. Senator Newhouse states that he *thinks* the omission of dairy products in the original statute was inadvertent. Moreover, the milk producers have presented no legislative history from the time of the original statute which supports Senator Newhouse's characterization of the Legislature's original intent. In light of the deliberate nature of the Legislature's original narrowing of the definition of "agricultural products", it would seem more logical that the Legislature originally meant exactly what it stated.

Because this court requires that an amendment be clearly curative before retroactivity will be granted, the milk producers have failed to show that they are entitled to retroactivity under this theory.

C. Retroactivity of Remedial Statutes.

■ In general, "[a]n amendment is deemed remedial and applied retroactively when it relates to practice, procedure

or remedies, and does not affect a substantive or vested right." *In re Mota*, 114 Wn.2d at 471; *see Howell*, 114 Wn.2d at 47; *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 510, 730 P.2d 1327 (1986). The amendment should be applied retroactively only when doing so would further the remedial purpose. *Macumber*, 96 Wn.2d at 570.

The parties argue at considerable length over the remedial nature of the 1991 amendment. The milk producers contend the amendment is remedial because it simply creates an additional remedy for the collection of a debt. We need not directly address this issue. Even if the amendment is remedial in nature, it cannot be given retroactive effect in this case.

 As indicated above, a remedial statute cannot be retroactively applied if it affects a vested right. *See Miebach*, 102 Wn.2d at 180-81 (declining to retroactively apply RCW 6.24.145, despite the statute's remedial aspect, when doing so would impinge upon a vested right). A vested right involves "more than . . . a mere expectation"; the right must have become "a title, legal or equitable, to the present or future enjoyment of property". *Miebach*, 102 Wn.2d at 181 (quoting *Gillis v. King Cy.*, 42 Wn.2d 373, 377, 255 P.2d 546 (1953); 2 T. Cooley, *Constitutional Limitations* 749 (8th ed. 1927)).

 Under the facts presented to this court, U.S. Bank's rights in this case are vested. U.S. Bank possesses a perfected security interest in Foremost's inventory and accounts receivable. A perfected security interest is more than a mere expectation and qualifies as an existing vested right. *See Tonkoff v. Roche Fruit & Produce Co.*, 137 Wash. 148, 151-52, 242 P. 3 (1926); 2 N. Singer, *Statutory Construction* § 41.06 n.13 (4th ed. 1986).

Additionally, applying the 1991 amendment retroactively to this case would "affect" U.S. Bank's vested interest as long as the retroactive application would cause U.S. Bank to recover a smaller amount of its secured claim. We can presume retroactive application would at least partially reduce

the amount of U.S. Bank's recovery, for the case would not be here otherwise. U.S. Bank would not be spending the resources to oppose the validity of the milk producers' liens if those liens did not affect its secured interest.

Because none of the rules of statutory interpretation yield a retroactive application of the 1991 amendment, we need not address U.S. Bank's contention that retroactive application would violate its constitutional rights. We also decline to rule on Western Washington Milk Producers' motion to strike a portion of U.S. Bank's brief; the portion of the brief being challenged relates solely to the constitutional issue that we have not needed to address.

■ The milk producers maintain they will suffer financial hardship if they are denied their liens. We sympathize with their predicament. Nevertheless, unlike the Legislature, we are not free to create liens anywhere they are needed. We must instead limit ourselves to examining the relevant statutes in determining the validity of any given claim of lien. The statutes at issue here simply do not entitle milk producers to processor liens for milk delivered prior to the effective date of the 1991 amendment.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.