[No. 21958-5-III. Division Three. September 9, 2004.]

DUNCAN J. MCNEIL, *Plaintiff*, ROBERT E. CARUSO, *Appellant*, v. JOHN T. POWERS, JR., ET AL., *Respondents*.

*Robert E. Caruso,* pro se.

*Duane M. Swinton* (of *Witherspoon, Kelley, Davenport & Toole, P.S.*); *John D. Munding* (of *Crum & Munding*); and *Laurel H. Siddoway* (of *Randall & Danskin, P.S.*), for respondents.

BROWN, J. — Duncan McNeil, a person identified as a "vexatious litigant" in two bankruptcy courts, filed a frivolous lawsuit against John Powers and the others listed in the case caption. Attorney Robert Caruso initiated the suit on Mr. McNeil's behalf. Mr. Caruso withdrew as Mr. McNeil's attorney prior to summary judgment dismissal of

Mr. McNeil's complaint. The superior court granted Mr. Powers' CR 11 motion requiring Mr. Caruso to pay Mr. Powers' costs and attorney fees incurred while Mr. Caruso represented Mr. McNeil. Mr. Caruso appealed. We affirm the sanctions.

## FACTS

Mr. McNeil's alter ego entities filed an adversary bankruptcy proceeding against a multitude of parties including himself and Mr. Powers individually in the United States Bankruptcy Court, Central District of California. Mr. McNeil was assisted in that matter by attorney Carlos Valero. Mr. McNeil specially retained Mr. Caruso in related matters. On October 2, 2000, the bankruptcy court entered a tentative order dismissing the adversary proceeding and declaring the "plaintiffs" (specifically naming Mr. McNeil who cast himself as a defendant) to be vexatious litigants.

The *Spokesman-Review* newspaper reported that the bankruptcy court had declared Mr. McNeil a vexatious litigant. Offended, Mr. McNeil and Mr. Caruso (and others) went to the newspaper's office to confront the reporter, Chris Peck, to demand a retraction. Mr. McNeil and his entourage were ultimately escorted off the premises. The newspaper later published a clarification pointing out Mr. McNeil's connection with the bankruptcy plaintiffs but otherwise stood by the accuracy of its reporting.

Spokane's alternative weekly, *The Inlander* then published a story describing the confrontation at the newspaper office in which Mr. Peck quoted Mr. McNeil as saying, " 'I'm gonna sue you.' " Clerk's Papers (CP) at 983. The story quoted Mr. Peck as saying, " 'I thought he was going to punch me out.' " CP at 983.

Another *Spokesman-Review* article reported that Mr. McNeil left telephone messages with staff working on Mr. Powers' mayoral campaign threatening to release information about his litigation against Mr. Powers unless the mayoral candidate settled with him. In a private letter to the newspaper, Mr. McNeil, insisting he was not subject to

the bankruptcy court's vexatious litigant determination, renewed his retraction demand with respect to the first newspaper story as well as the subsequent stories, and, referencing Mr. Caruso, threatened to litigate the matter. Mr. McNeil also sent a letter, "on the advi[c]e of counsel," to Mr. Powers and his campaign organization as a "Final Demand" to retract allegedly false statements about him. CP at 907-12.

On November 2, 2000, the California bankruptcy court entered a written order declaring Mr. McNeil's alter ego entities and Mr. McNeil individually to be vexatious litigants. The court required Mr. McNeil to obtain leave of the court and to post a $100,000 bond before he filed any new related proceedings.

On November 2, 2000, Mr. Caruso filed Mr. McNeil's verified defamation complaint against John Powers, the John Powers for Mayor Campaign, *The Spokesman-Review*, Cowles Publishing Company, William Stacy Cowles, Chris Peck, and various other individuals and entities, including Mr. Powers' lawyers (collectively Mr. Powers). By counsel, Mr. Powers wrote to Mr. Caruso asking for voluntary dismissal and threatening to seek CR 11 sanctions if Mr. McNeil did not drop the frivolous matter. When Mr. McNeil persisted, Mr. Powers filed an answer in March 2001 requesting, among other things, CR 11 sanctions. Mr. Powers moved for summary judgment of dismissal while reserving "the right to seek sanctions against plaintiff and his counsel for pursuing this meritless claim." CP at 57.

On April 20, 2001, the California bankruptcy court entered an order in that case awarding Mr. Powers and others more than $40,000 in costs and attorney fees assessed against Mr. McNeil and Mr. Valero. The Ninth Circuit eventually sanctioned Mr. Valero for his actions on behalf of Mr. McNeil. Our Supreme Court also sanctioned Mr. Valero. *In re Disciplinary Proceeding Against Valero*, 150 Wn.2d ff 1113 (2003).

Meanwhile, Mr. McNeil was litigating with Mr. Powers and other parties in the United States Bankruptcy Court,

Eastern District of Washington. On April 27, 2001, that court dismissed Mr. McNeil's personal claims for lack of subject matter jurisdiction, and under the doctrines of res judicata, collateral estoppel, and federal comity.

On July 27, 2001, Mr. McNeil filed another bankruptcy petition in the United States Bankruptcy Court, Eastern District of Washington. In the petition, Mr. McNeil alleged that 120 listed court orders and actions involving him, including this matter, were "void ab initio and of no force and effect." CP at 172. On July 30, 2001, Mr. McNeil personally wrote a letter to Mr. Powers' counsel alleging his newly-filed petition stayed any further action on his superior court suit and threatening a federal lawsuit if Mr. Powers took any further steps in the matter.

Mr. Powers then filed a notice of hearing on his summary judgment motion set for September 19, 2001, and sent a copy to Mr. Caruso. Shortly thereafter, Mr. McNeil personally wrote a letter to Mr. Powers' counsel alleging "a knowing, intentional and willful violation of the automatic stay imposed July 27, 2001." CP at 119. Mr. McNeil demanded that Mr. Powers immediately withdraw the notice of hearing or else he would assert separate damage claims against Mr. Powers, Mr. Powers' counsel, counsel's law firm, and the John Powers for Mayor campaign. Mr. McNeil sent a copy of his letter to Mr. Caruso.

On July 31, 2001, the Central California Bankruptcy Court dismissed Mr. McNeil's previously filed Chapter 11 action involving many of the same parties here. By telephonic conference, the bankruptcy court confirmed to Mr. Powers' counsel that no automatic stay remained in that bankruptcy case.

In early September 2001, Mr. McNeil filed a memorandum opposing summary judgment, which included a motion for attorney fees, costs, damages, and punitive damages for Mr. Powers' alleged breach of the bankruptcy stay.

Later that month, Mr. McNeil removed the superior court case to the Eastern Washington bankruptcy court in con-

nection with his most recent bankruptcy petition. Mr. Powers objected. On December 3, 2001, Mr. McNeil, with the assistance of Mr. Valero, filed in the Eastern Washington bankruptcy court an amended complaint incorporating the claims underlying this appeal. On December 28, 2001, Mr. Caruso filed notice of intent to withdraw as attorney of record in the bankruptcy court. On January 31, 2002, Mr. McNeil, again with the assistance of Mr. Valero, filed a modified version of his amended complaint in the Eastern Washington bankruptcy court.

The Eastern Washington bankruptcy court dismissed Mr. McNeil's latest petition as frivolous in a sharply worded memorandum decision filed on February 21, 2002. The court noted Mr. McNeil had violated the California court's order. "Mr. McNeil's only business activity is not just litigation, but frivolous litigation." CP at 1702. "The manner in which Mr. McNeil has conducted this proceeding has been vexatious and burdensome to the parties and the court and is an abuse of the bankruptcy system." CP at 1709. The bankruptcy court sent a copy of its decision to Mr. Caruso.

On March 28, 2002, the bankruptcy court remanded the removed case back to state court. The bankruptcy court noted "the entire suit appears to be yet another installment in Mr. McNeil's continuing effort to harass as many parties as possible in as many legal forums as possible." CP at 202. The bankruptcy court struck Mr. McNeil's amended complaints of December 3, 2001 and January 31, 2002.

Mr. Caruso apparently withdrew as attorney for Mr. McNeil in the superior court matter on April 26, 2002. On June 10, 2002, Mr. McNeil, pro se, filed a second amended complaint for damages, alleging the same and many new causes of action, and the next day, again, removed the case to the Eastern Washington bankruptcy court. The bankruptcy court promptly remanded the matter back to the superior court in an order filed June 20, 2002. Mr. Powers filed notice of the remand order and a copy of that order in the superior court on June 26. Mr. McNeil, pro se, unsuccessfully attempted another last minute stay maneuver

before the superior court granted Mr. Powers' summary judgment motion and dismissed Mr. McNeil's complaint with prejudice on July 12, 2002.

In the words of the superior court, "[t]he litigation advanced by Mr. McNeil and his prior counsel was filed without good cause and was not well grounded in fact or in law." CP at 1278. "Defendants may move the court for an award of attorney's fees against Mr. McNeil's prior counsel in this case that filed the complaint on behalf of Mr. McNeil upon motion and subsequent hearing." CP at 1278.

Mr. Powers moved for CR 11 sanctions and submitted his billing records. Mr. Caruso mainly responded that he had conducted an adequate background investigation and therefore had good cause to file the complaint on Mr. McNeil's behalf. On February 27, 2003, Mr. Caruso, by reply memorandum, alleged an automatic bankruptcy stay precluded the superior court's jurisdiction to decide the summary judgment motion. Also, he challenged several billed items.

In a November 15, 2002 telephonic hearing, the superior court awarded Mr. Powers $8,783.88 against Mr. McNeil and $7,817.30 against Mr. Caruso. The trial court filed a consistent judgment, findings of fact, and conclusions of law on March 11, 2003.

Mr. Caruso and Mr. McNeil appealed. Mr. McNeil's appeal was declared abandoned. On May 10, 2004, Mr. Caruso filed a motion on the merits, which we decide in analyzing the appeal.

## ANALYSIS

### A. Jurisdiction

The issue is whether, considering the bankruptcy proceedings, the superior court erred in determining it had jurisdiction to enter summary judgment and assess sanctions against Mr. Caruso.

Generally, when we review a summary judgment order, we engage in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). We view the evidence in a light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate when the pleadings and evidence on file show no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c).

■ Initially, we note Mr. Caruso's assignments of error confusingly consist almost entirely of verbatim quotes of the superior court's summary judgment order and its findings of fact and conclusions of law granting Mr. Powers' CR 11 motion. In his argument, however, Mr. Caruso addresses solely matters pertaining to the superior court's jurisdiction and the reasonableness of the amount of sanctions. "This court generally does 'not engage in conjectural resolution of issues present, but not briefed.' " *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 456, 832 P.2d 1303 (1992) (quoting *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 785, 819 P.2d 370 (1991)).

■ Consequently, we will not consider Mr. Caruso's sweeping assignments of error regarding the summary judgment merits leading to these sanctions. *In re F.D. Processing*, 119 Wn.2d at 455-56. We accept as a verity on appeal that Mr. Caruso aided Mr. McNeil in pursuing a frivolous lawsuit aimed solely at harassing Mr. Powers. Therefore, CR 11 sanctions are merited. Our inquiry in this part of our analysis is limited to whether, considering the bankruptcy proceedings, the superior court had jurisdiction to decide the summary judgment. In the next part of our analysis, we analyze whether the sanction was reasonable.

■■ Generally, a chapter 11 petition operates as a stay against legal proceedings against the debtor. 11 U.S.C. § 362(a)(1). But the stay ordinarily does not apply to litigation initiated by the debtor, such as the tort suit Mr. McNeil filed against Mr. Powers. *Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r of Internal Revenue*, 249 F.3d 175, 180 (3d Cir. 2001); *Aiello v. Providian*

*Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001). Nor was Mr. McNeil's suit a continuation of administrative proceedings against him subject to the automatic stay. *Delpit v. Comm'r of Internal Revenue Serv.*, 18 F.3d 768, 770-71 (9th Cir. 1994). In other words, Mr. McNeil cannot impose frivolous and burdensome tort litigation on Mr. Powers and then scurry under the protective cover of the bankruptcy stay when Mr. Powers replied with a summary judgment motion.

Moreover, Mr. McNeil violated the California bankruptcy court's order to obtain leave and to post a bond before he filed his July 27, 2001 bankruptcy petition in the Eastern Washington bankruptcy court. That latter court condemned Mr. McNeil's blatant violation, as well as the frivolous and abusive nature of the petition and dismissed the matter outright in February 2002. The bankruptcy court then remanded Mr. McNeil's tort claims against Mr. Powers to the superior court in March 2002.

■ Recklessly, Mr. McNeil filed a second amended complaint in state court and then tried to remove the action yet again to the bankruptcy court in June 2002. The bankruptcy court did not hesitate in remanding the matter back to state court on June 20, 2002. Summary judgment issued on July 12, 2002. Flagrant abuse of the bankruptcy system nullifies the petitioner's claim of a stay in situations such as this. *See generally Fed. Deposit Ins. Corp. v. Cortez*, 96 F.3d 50, 50-51 (2d Cir. 1996) (holding debtor's collusion in improperly filing new petition in violation of court order did not trigger the automatic stay); *In re Hall*, 216 B.R. 702, 711 (E.D.N.Y. 1998) (holding chapter 13 debtor's abuse of the bankruptcy process warranted dismissal with prejudice). Mr. Caruso's argument on this point lacks merit.

■ Mr. Caruso next relies on the bankruptcy clerk's September 2002 letter to argue that the bankruptcy court retained jurisdiction at the time of summary judgment. But the bankruptcy court entered its remand order well before the summary judgment hearing without objection from either Mr. McNeil or Mr. Caruso. The bankruptcy court

dismissed the underlying petition several months before that. Moreover, the superior court was notified of the remand order before it held the summary judgment hearing. The bankruptcy court clerk's letter was not a court order denoted and entered as such. *See generally Carter v. Beverly Hills Sav. & Loan Ass'n*, 884 F.2d 1186, 1189-90 (9th Cir. 1989) (discussing entry of federal court orders). Instead, the letter was a housekeeping matter accompanying transfer of files, not transfer of jurisdiction. Consequently, we reject Mr. Caruso's argument on this point.

■ ■ Mr. Caruso additionally argues that summary judgment was inappropriate because Mr. McNeil's first amended complaint filed in the bankruptcy court in December, 2001 superseded his first complaint filed in the superior court. But the bankruptcy court struck that amended complaint and another one filed after it when it dismissed Mr. McNeil's petition on March 28, 2002. As a result, the first amended complaint no longer existed for purposes of the later summary judgment proceeding in superior court. Consequently, we reject Mr. Caruso's argument on this point.

Mr. Caruso obscurely argues the superior court lacked jurisdiction because the claim for attorney fees was tantamount to a bankruptcy compensation matter. But these sanctions were never part of the bankruptcy proceeding. The bankruptcy court had dismissed the most recent petition well before the CR 11 matter was heard in the state court. The sole reason Mr. McNeil's underlying suit was before the bankruptcy court at all was because of his abusive and ultimately futile attempt to remove the matter to that court. The bankruptcy court readily recognized the matter belonged in state court and remanded it. Mr. Caruso's argument on this point necessarily fails.

■ Mr. Caruso contends for the first time in his reply brief that the summary judgment and resulting sanctions were an improper attempt to obtain possession or control of the bankruptcy estate's property. 11 U.S.C. § 362(a)(3). We will not consider an issue raised and argued for the first

time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Even so, the bankruptcy court dismissed the petition well before the summary judgment hearing. The purpose of the summary judgment was to dismiss the suit, not to seek damages in the bankruptcy estate. Thus, the sanctions imposed on Mr. Caruso bore no relation to that property. Mr. Caruso's argument on this point is frivolous.

▮ Finally, in his motion on the merits, Mr. Caruso complains for the first time that, as opposing counsel, he did not have five days notice prior to entry of the summary judgment order. CR 54(f)(2). But his stance conflicts with his allegation that he was no longer counsel of record on the matter. Moreover, he fails to show the alleged lack of notice of the summary judgment caused him any prejudice. *Burton v. Ascol*, 105 Wn.2d 344, 352, 715 P.2d 110 (1986); *Soper v. Knaflich*, 26 Wn. App. 678, 681, 613 P.2d 1209 (1980). Mr. Caruso had ample notice of the CR 11 motion. We deny his motion on the merits.

In sum, Mr. McNeil's frivolous tort suit against Mr. Powers did not belong in bankruptcy court. The bankruptcy court easily recognized Mr. McNeil's abuse of the system and remanded the matter twice to the superior court. Mr. McNeil's flagrant abuse of the bankruptcy system to avoid summary judgment does not excuse Mr. Caruso's original conduct in filing this frivolous suit. The superior court had jurisdiction to grant summary judgment and later assess a CR 11 sanction against Mr. Caruso.

### B. Reasonableness of Fees and Costs

The issue is whether the trial court erred in determining the fees and costs assessed against Mr. Caruso were reasonable.

▮ We review an award of CR 11 sanctions for abuse of discretion. *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). When imposing CR 11 sanctions, the trial court must specify the sanctionable

conduct in its order. *Id*. at 904. "The court must make a finding that either the claim is not grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, or the paper was filed for an improper purpose." *Biggs v. Vail*, 124 Wn.2d 193, 201, 876 P.2d 448 (1994).

 ██ Here, the superior court specifically concluded that Mr. McNeil's "complaint, drafted and signed by Mr. Caruso, was a frivolous and vexatious action . . . without basis in law or fact and solely for the purpose of harassing these moving defendants." CP at 1631. The superior court further concluded "Caruso knew or should have known that the actions of plaintiff in pursuing this action were frivolous and vexatious, lacked any basis in law or fact, and were brought solely for the purpose of harassing these moving defendants." CP at 1631. Notwithstanding his sweeping assignments of error, Mr. Caruso does not argue that the superior court erred in finding sanctions appropriate.

Regarding size of the sanction, Mr. Caruso contends vaguely that some of the claimed hourly rates were too high. He fails to cite specific examples from the record. RAP 10.3(a)(5). Without providing reasoned written appellate argument, Mr. Caruso improperly attempts to incorporate by reference his briefing in the superior court. *U.S. W. v. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 111-12, 949 P.2d 1337 (1997); *Kaplan v. N.W. Mut. Life Ins. Co.*, 115 Wn. App. 791, 800 n.5, 65 P.3d 16 (2003), *review denied*, 151 Wn.2d 1037 (2004); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998); RAP 10.3(a)(5). The issues relying on incorporated briefing are considered abandoned. *Holland*, 90 Wn. App. at 538. In any event, Mr. Powers did file the necessary documentation in the superior court showing hours spent and hourly rates for the persons involved. Thus, a tenable basis existed for the amount of fees awarded. Given all, Mr. Caruso has not shown that the superior court abused its discretion in imposing CR 11 sanctions or in deciding the reasonableness of the amount of sanctions.

## C. Appellate Attorney Fees

Mr. Caruso asks for attorney fees on appeal. But he does not prevail for purposes of a fee award under RAP 18.1.

■ ■ Mr. Powers asks for attorney fees pursuant to RAP 18.1 and former RCW 4.88.260 (repealed by LAWS OF 1988, ch. 202, § 96). However, the Rules of Appellate Procedure (RAP) specifically superseded former RCW 4.88.260. *See State v. Keeney*, 112 Wn.2d 140, 142-43, 769 P.2d 295 (1989). Moreover, RAP 18.1 alone does not authorize a fee award; it merely outlines the procedures to be followed when "applicable law" grants the prevailing party the right to recover fees. RAP 18.1(a). Under the *American Rule*, the right to attorney fees depends on "statutes, any contract between the parties, and, occasionally, case law." 3 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, RAP 18.1 at 572 (5th ed. 1998). Because Mr. Powers fails to cite "applicable law" authorizing an award of fees under RAP 18.1(a), we deny his request. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 705, 915 P.2d 1146 (1996); *Thweatt v. Hommel*, 67 Wn. App. 135, 148, 834 P.2d 1058 (1992).

Affirmed.

SWEENEY, A.C.J., and HUTTON, J. Pro Tem., concur.