IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 81368-4-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN FREDRICK FLYNN, III, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — John F. Flynn, III was resentenced in 2016 for crimes committed in 1993. In December 2018, he was found in violation of several conditions of community custody at a superior court hearing and received a 120-day jail sanction. Flynn appeals the 2018 order modifying his sentence and argues that multiple conditions he was found to have violated were not authorized by the statute under which he was sentenced. He also raises ineffective assistance of counsel for failure to challenge the validity of the community custody conditions at the violation hearing. We find the conditions at issue are valid affirmative acts to monitor compliance with court ordered conditions and that counsel was not deficient for not objecting to the violations on that basis. We affirm.

FACTS

In May 1994, John Flynn was found guilty of rape in the first degree and burglary in the first degree committed in 1993. Flynn was sentenced to 280 months in prison. The court also imposed two years of community custody supervised by a community corrections officer (CCO) from the Department of Corrections (DOC), as required by statute. While incarcerated, Flynn filed a personal restraint petition alleging incorrect calculation of his offender score based on the inclusion of convictions in his criminal history which were not his. The State ultimately conceded that the challenged convictions in Flynn's criminal history were not his. In July 2016, the Washington Supreme Court remanded Flynn's case to the trial court for recalculation of his offender score and resentencing.

Flynn was resentenced on the 1994 convictions in October 2016. The court sentenced Flynn to 240 months for the rape conviction and 89 months for the burglary charge, to run concurrently. The court also imposed two years of community custody to follow Flynn's release from prison as it had at his original sentencing in 1994. The court ordered Flynn to abide by numerous conditions during his period of DOC supervision. The conditions included performance of affirmative acts to confirm compliance with court orders, enrollment in electronic monitoring if ordered by DOC, compliance with any additional conditions imposed under RCW 9.94A.704 and RCW 9.94A.706, and observance of any crime related prohibitions: "per CCO." Flynn filed a notice of appeal after resentencing, but his appeal was dismissed.

Flynn began his term of community custody in February 2018 after release from civil commitment proceedings. In October 2018, DOC alleged Flynn had violated his conditions by consuming alcohol. The next month, DOC alleged further violations including failure to abide by curfew, failing to report to DOC, and failing to comply with urinalysis. The State filed a petition for a hearing to determine noncompliance which asserted the following violations:

1. Consuming alcohol on or about 10/15/18;
2. Consuming alcohol on or about 10/22/18;
3. Failure to abide by curfew on 11/17/18;
4. Failure to report as directed to CCO on 11/19/18;
5. Failure to be available for urinalysis on 11/19/18;
6. Failing to report [to DOC] as directed since on or about 11/26/18 and 11/27/18;
7. Failing to comply with curfew on or about 11/26/18;
8. Failure to be available for urinalysis testing since on or about 11/26/18;
9. Failing to attend sex offender/sexual deviancy treatment for the last several weeks[.]

The court conducted a hearing on the alleged violations on December 7, 2018. Flynn stipulated to all nine violations, but presented argument as to the sanction. The court imposed 120 days jail for the violations. Flynn timely appeals the order modifying sentence.

ANALYSIS

Flynn argues the trial court improperly imposed numerous conditions of community placement during his resentencing in 2016. Flynn contends that the conditions were not authorized by former RCW 9.94A.120(8)(b) or (c) and therefore must be stricken from his judgment and sentence.

I.     Collateral Attack on Conditions of Sentence

The State avers that Flynn's broad challenge to the conditions of his 2016 sentence, including those that were not at issue or relevant to the trial court's ruling at his December 2018 violation hearing, is an improper attempt to collaterally attack the 2016 judgment and sentence. We agree that our scope of review is more limited than that which Flynn seeks.

To appeal a decision by a trial court, a notice of appeal must be filed within 30 days after entry of the decision for which the party seeks review. RAP 5.2(a). A party may not try and use an appeal of a specific issue that is not time barred to attack the underlying judgment and sentence where the allowed time to appeal the judgment and sentence has expired. See State v. Gaut, 111 Wn. App. 875, 880-81, 46 P.3d 832 (2002); See also State v. Larranga, 126 Wn. App. 505, 509, 108 P.3d 833 (2005).

Flynn's appeal is limited to the conditions relevant to the court's decision at the violation hearing in December 2018. Though Flynn asks this court to review five community custody conditions, only two relate to the trial court's order from that hearing. The conditions properly before this court on review are: performing affirmative acts to confirm compliance with the orders of the court and submission to electronic monitoring (GPS) if imposed by DOC.

II.    Violation of Conditions of Community Custody

We review sentencing conditions for abuse of discretion. In re Per. Restraint Pet. of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). The trial court abuses its discretion when it applies the wrong legal standard. State v. Dixon, 159 Wn.2d

65, 75-76, 147 P.3d 991 (2006). "When we review whether a trial court applied an incorrect legal standard, we review de novo the choice of law and its application to the facts in the case." State v. Corona, 164 Wn. App. 76, 79, 261 P.3d 680 (2011).

Under the Sentencing Reform Act of 1981 (SRA),[1] a defendant must be sentenced in accordance with the law in effect at the time of their offense. State v. Medina, 180 Wn.2d 282, 287, 324 P.3d 682 (2014). RCW 9.94A.120 (1993) controls for the felony offenses for which Flynn was convicted. If sentenced to the statutory maximum for a sex crime, RCW 9.94A.120(8)(b) (1993) required the convicted individual to serve two years of community placement following incarceration. The following community placement conditions were required for offenders supervised for a sex offense, unless waived by the court:

(i)    The offender shall report to and be available for contact with the assigned community corrections officer as directed;

(ii)   The offender shall work at department of corrections-approved education, employment, and/or community service;

(iii)  The offender shall not consume controlled substances except pursuant to lawfully issued prescriptions;

(iv)   An offender in community custody shall not unlawfully possess controlled substances;

(v)    The offender shall pay supervision fees as determined by the department of corrections; and

(vi)   The residence location and living arrangements are subject to the prior approval of the department of corrections during the period of community placement.

RCW 9.94A.120(8)(b)(i)-(vi) (1993). The following special conditions could also be authorized by the court:

(i)    The offender shall remain within, or outside of, a specified geographic boundary;

(ii)   The offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals;

_____

[1] Ch. 9.94A RCW.

-5-

    (iii)    The offender shall participate in crime-related treatment or counseling services;

    (iv)    The offender shall not consume alcohol; or

    (v)    The offender shall comply with any crime-related prohibitions.

RCW 9.94A.120(8)(c)(i)-(v) (1993).

Sex offenders were also required to abide by the general conditions for felony offenders. RCW 9.94A.120(12) (1993). These conditions included reporting as directed to a community corrections officer, remaining within prescribed geographic boundaries, notifying the community corrections officer of changes in address or employment, and paying the supervision fee and assessment. Id.

Under the statute in effect at the time of Flynn's conviction and original sentencing, RCW 994A.120 (1993), the trial court had exclusive authority to set community placement conditions for sex offenders. In re Per. Restraint Pet. Of Capello, 106 Wn. App. 576, 584-85, 24 P.3d 1074 (2001) (superseded in part by In re Pers. Restraint of Stewart, 115 Wn. App. 319, 75 P.3d 521 (2003)). The statute was later amended in 1996, allowing the court and DOC to impose conditions for offenders on community custody. Id. at 584. However, this amendment only applied to offenders sentenced after its enactment. Id. In 1997, further amendments to RCW 9.94A.120 and RCW 9.94A.030 were passed which authorized the court to order a supervised individual to engage in affirmative acts to monitor compliance with conditions. State v. Riles, 135 Wn.2d 326, 342-43, 957 P.2d 655 (1998) (abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010)). These amendments were found by our supreme court to be clarifying existing law. Id. at 343. Amendments clarifying existing law, and not changing the substantive law, are considered remedial and curative, and apply

retroactively. State v. Jones, 110 Wn.2d 74, 82, 750 P.2d 620 (1988). In State v. Maples, the Supreme Court determined a sentencing court may order an offender to perform affirmative acts as required by DOC to monitor compliance with existing conditions for crimes committed prior to the 1997 changes. 171 Wn. App. 44, 51, 286 P.3d 386 (2012).

### A. Affirmative Acts Condition

Flynn argues the imposition of a curfew and use of GPS monitoring, both conditions he was found to have violated at the December 2018 hearing, were not authorized by law and therefore void. Though Flynn argued that he could not be required to submit to other affirmative acts that DOC deems necessary to monitor compliance with court orders, this argument is out of line with Maples and not well taken. See Id.

State v. McClinton is informative as to DOC's authority to require a supervised individual to submit to monitoring of their location and movement prior to the statutory amendment and passage of RCW 9.94A.704(5)(b) which explicitly authorizes such monitoring. 186 Wn. App. 826, 833-34, 347 P.3d 889 (2015). In McClinton, this court reviewed DOC's authority to impose GPS monitoring on a sex offender sentenced in 1995. Id. at 828. We rejected the argument that DOC's authority to require a supervised individual to submit to electronic monitoring was analogous to Capello, wherein DOC required preapproval of Capello's proposed residence and living arrangement prior to him being transferred to community supervision. Id. at 829-31. In Capello, the court had the authority but declined to order such a condition. Id.

The following passage is extremely instructive as to this condition and Flynn's challenge to affirmative acts generally:

> [I]t is unnecessary to determine whether such authority can be deduced from the 2008 amendment. Because McClinton committed his crimes in 1995 (between July 1, 1990, and June 6, 1996), under Riles, he is subject to the 1997 clarifying amendment. He must "submit to affirmative acts necessary to monitor compliance with the orders of the court as required by the department."

Id. 834 (quoting Riles, 135 Wn.2d at 342-43). The court in McClinton went on to find that GPS monitoring was an affirmative act necessary to monitor compliance with the condition that had been imposed to remain within prescribed geographic boundaries. That condition was refined with the following language: "[d]o not attend X-rated movies, peep shows or adult book stores without the approval of the sexual deviancy treatment specialist or Community Corrections Officer," and "[d]o not enter any business where alcohol is the primary commodity for sale." Id. at 836. This court expressly held that DOC had authority to impose GPS monitoring in this context. Id.

The record demonstrates that Flynn also had requirements like McClinton to, "not be in any place where alcoholic beverages are the primary sale item," and "not enter liquor stores or where alcohol is the primary commodity for sale." The trial court also ordered that Flynn "[r]emain within or outside of geographic boundaries as specified." We cannot ignore the guidance from McClinton. DOC was vested with the authority to monitor compliance with court ordered conditions through affirmative acts. Flynn's two alcohol related conditions are nearly identical to the requirement in McClinton of "[d]o not enter any business where alcohol is the primary commodity for sale." Id. at 836. Our holding in McClinton is directly

implicated in the issue Flynn raises here regarding his submission to electronic monitoring, yet he does not attempt to distinguish or otherwise address the case. Flynn was required to submit to electronic monitoring as an act to ensure his compliance with his conditions regarding not entering locations primarily focused on the sale of alcohol and, following McClinton, we find that the requirement of GPS monitoring is necessary to assess Flynn's compliance.

Flynn next challenges DOC's imposition of a curfew as a condition of his supervision. At the December 2018 hearing, the court found Flynn violated this condition and he advances the same argument as to the condition for GPS monitoring; that DOC had no authority to impose a curfew. Flynn concedes that a court-imposed curfew could qualify as a crime-related condition under RCW 9.94A.120(8)(c)(v) (1993), but focuses his challenge on the authority of DOC to impose a curfew independently from the court. However, we consider compliance with a curfew to be an affirmative act necessary to monitor Flynn's compliance with the court-ordered conditions of residing at a location or in a living arrangement approved by DOC (RCW 9.94A.120(88)(b)(vi) (1993)) and remaining within, or outside of, a particular geographic boundary (RCW 9.94A.120(8)(c)(i) (1993)). As in McClinton, Flynn committed his crime between July 1, 1990 and June 6, 1996 and is thereby subject to the 1997 clarifying amendment. Id. at 834. The 1997 clarifying amendment allows for affirmative acts for monitoring court-imposed conditions of supervision. Maples is clear that this amendment applies retroactively. 171 Wn. App. at 51. Though Flynn challenges the curfew as a distinct condition, we find it is an affirmative act in order to monitor that Flynn remains

within prescribed geographical boundaries, specifically as to his condition to abstain from locations where the primary sale is alcohol, and to reside at his DOC-approved address.

We find the requirement that Flynn submit to GPS tracking to monitor his compliance with not entering locations where the primary business if the sale alcohol is in line with our precedent in McClinton. 186 Wn. App. 826. We also find that the requirement to abide by a curfew is a valid affirmative act that relates to the conditions of his supervision as legally authorized by the sentencing court.

Flynn also asserts that he received ineffective assistance of counsel because his attorney did not object to the conditions as unauthorized by law at his violation hearing. Because we find that these conditions were proper, this claim fails as a matter of law.

Affirmed.

WE CONCUR: